# No. 24-10398

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

JAMES HAWTHORNE,

Plaintiff - Appellant

v.

BIRDVILLE INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee

---

## On Appeal from
United States District Court for the Northern District of Texas

4:23-CV-00301-BP

---

## BRIEF OF APPELLANT JAMES HAWTHORNE

---

SUBMITTED BY:

Debra Edmondson
State Bar No. 24045824
debra@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
P.O. Box 92801
325 Miron Dr., Ste. 100
Southlake, Texas 76092
Telephone: (817) 416-5921

Joseph Glover
State Bar No. 24131334
josephg@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
P.O. Box 92801
325 Miron Dr., Ste. 100
Southlake, TX 76092
Telephone: (817) 416-5921

# CERTIFICATE OF INTERESTED PERSONS

The number and style of the case in the court below is as follows – *James Hawthorne v. Birdville Independent School District*, cause number 4:23-cv-00301-BP, in the United States District Court for the Northern District of Texas, Fort Worth Division.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Birdville Independent School District | Meredith Prykryl Walker of Walsh Gallegos Treviño Kyle & Robinson P.C. |

| Appellants: | Counsel for Appellants: |
|---|---|
| James Hawthorne | Debra Edmondson Joseph Glover The Edmondson Law Firm Southlake, TX |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| | |
| | |

/S/Debra Edmondson
Debra Edmondson

ii

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant James Hawthorne ("Hawthorne") requests oral argument as he believes it could significantly aid the decisional process in this case. This case presents a unique set of facts and legal issues regarding retaliation and claims of hostile work environment. Oral argument would be an excellent vehicle for discussion of the interrelationship of these issues.

# TABLE OF CONTENTS

Contents                                                    Page(s)

CERTIFICATE OF INTERESTED PERSONS ..................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................iv

TABLE OF CONTENTS.........................................................................................v

TABLE OF AUTHORITIES ............................................................................... vii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES ............................................................................1

STATEMENT OF THE CASE................................................................................2

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT ........................................................................................................13

    I.      Standards of Review .............................................................................13

    II.     Genuine Disputes of Material Fact Exist with
           Respect to Mr. Hawthorne's Retaliation Claim......................................14

         A. James Hawthorne Has Established a *Prima Facie*
            Claim for Retaliation Against Birdville ISD
            as a Matter of Law ...........................................................................14

         B. The District Court Erred When It Held That
            Hawthorne Did Not Establish a *Prima Facie*
            Claim for Retaliation .......................................................................18

III.   A Genuine Dispute of Material Fact Exists with
       Respect to Whether Shelley Freeman is a
       "Nearly Identical Comparator" ............................................................20

       A. Mr. Hawthorne Properly Established
          Freeman as a "Nearly Identical
          Comparator" ...............................................................................20

       B. The District Court Erred When It Held
          Freeman is Not a "Nearly Identical
          Comparator" ...............................................................................24

IV.    Genuine Disputes of Material Fact Exist
       with Respect to Mr. Hawthorne's Discrimination
       Claim ...................................................................................................25

       A. Mr. Hawthorne Established a Genuine Dispute
          Of Material Fact Regarding a Hostile Work
          Environment ...............................................................................26

       B. The District Court Erred When It Held
          Hawthorne Failed to Show Harassment
          that Altered the Conditions of His Employment................................29

CONCLUSION .............................................................................................30

CERTIFICATE OF SERVICE...........................................................................32

CERTIFICATE OF COMPLIANCE ...................................................................33

# TABLE OF AUTHORITIES

**Cases**..................................................................................**Pages(s)**

CASES

*Ackel v. National Communications, Inc.*
339 F.3d 376 (5th Cir. 2003)....................................................16

*Amezquita v. Ben. Tex., Inc.*
264 F. App'x 379 (5th Cir. 2008) ...........................................25

*Aryain v. Wal-Mart Stores Tex. LP*
534 F.3d 473 (5th Cir. 2008).....................................................27

*Broderick v. Donaldson*
437 F.3d 1226 (D.C. Cir. 2006) ...............................................16

*Burlington Indus. v. Ellerth*
524 U.S. 742 (1998)............................................................17, 26

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)...................................................................13

*Cherry v. Shaw Coastal, Inc.*
668 F.3d 182 (5th Cir. 2012).....................................................26

*Cooper Tire & Rubber Co. v. Farese*
423 F.3d 446 (5th Cir. 2005).....................................................14

*Croley v. Matson Navigation Co.*
434 F.2d 73 (5th Cir. 1970........................................................14

*Gorman v. Verizon Wireless Tex.*, L.L.C.
753 F.3d 165 (5th Cir. 2014)................................................ 20-21

*Hagen v. Aetna Ins. Co.*
808 F.3d 1022 (5th Cir. 2015)...................................................13

*Harris v. Forklift Sys., Inc.*
510 U.S. 17 (1993).................................................................................27

*Hernandez v. Yellow Transp., Inc.*
670 F.3d 644 (5th Cir. 2012)....................................................................27

*Lee v. Kan. City S. Ry. Co.*
574 F.3d 253 (5th Cir. 2009)............................................................. 21-22

*Lindsley v. TRT Holdings, Inc.*
984 F.3d 460 (5th Cir. 2021)....................................................................20

*Marsden v. Patane*
380 F.2d 489 (5th Cir. 1967)....................................................................14

*Mission Independent School Dist. v. Garcia*
372 S.W.3d 629 (Tex. 2012).....................................................................20

*Pope v. ESA Services, Inc.*
406 F.3d 1001 (8th Cir. 2005)..................................................................16

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*
810 F.3d 940 (5th Cir. 2015).............................................................15, 17

*Ray v. UPS*
587 F. App'x 182 (5th Cir. 2014) .............................................................22

*Reeves v. Sanderson Plumbing Prods.*
530 U.S. 133 (2000).................................................................................21

*Robinson v. Orient Marine Co.*
505 F.3d 364 (5th Cir. 2007).)..................................................................14

*Scott v. U.S. Bank Nat'l Ass'n*
16 F.4th 1204 (5th Cir. 2021)...................................................................15

*Shager v. Upjohn Co.*
913 F.2d 398 (7th Cir. 1990).....................................................................17

*Tolan v. Cotton*
576 U.S. 650 (2014).........................................................................14

*Vaughn v. Woodforest Bank*
665 F.3d 632 (5th Cir. 2011)..........................................................21

*Wallace v. Methodist Hosp. Sys.*
271 F.3d 212 (5th Cir. 2001)...........................................................21

*Wantou v. Wal-Mart Stores Texas*
L.L.C., 23 F.4th 422 (5th Cir. 2022) ..............................................26


**FEDERAL STATUTES**

28 U.S.C. § 1291.................................................................................7

42 U.S.C. § 2000e-2(a)(1)..............................................................26

42 U.S.C. § 2000e-5(e)(1)...............................................................26


**FEDERAL RULES**

5th Cir. R. 28.2.1 ............................................................................. ii

5th Cir. R. 32.1 ...............................................................................33

FED. R. APP. P. 32(a)(5) .................................................................33

FED. R. APP. P. 32(a)(6) .................................................................33

FED. R. APP. P. 32(a)(7)(B) ...........................................................33

FED. R. APP. P. 32(f) ......................................................................33

Fed. R. Civ. P. 56(a) .......................................................................13

ix

Fed. R. Civ. P. 56(e)(3)..............................................................................13

**TO THE HONORABLE JUSTICES OF THE UNITED STATES COURT OF**

**APPEALS FOR THE FIFTH CIRCUIT AT NEW ORLEANS:**

COMES NOW James Hawthorne, Plaintiff-Appellant, and submits

Appellant's Brief.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is an

appeal from a final judgment of a district court. Notice of appeal was timely filed in

accordance with Rule 4(a) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

1.    The district court erroneously held that Mr. Hawthorne did not engage

in a protected activity when he repeatedly inquired about his salary and lack of pay

raise.

2.    The district court erroneously held that a supervisor reporting to the

same individual cannot be held as a nearly identical comparator when determining

if an employer's proffered explanation for an adverse employment decision is

merely pretextual.

3.    The district court erroneously held that Freeman and Bowman did not

subject Mr. Hawthorne to a hostile work environment based on his sex.

## STATEMENT OF THE CASE

Mr. Hawthorne is a white male. Mr. Hawthorne worked for BISD for twelve (12) years and worked in his position as a Warehouse Central Storage Supervisor for eight (8) years. (ROA.351-447). In his time with BISD, Mr. Hawthorne was never written up for any kind of disciplinary action (until October 8, 2021). (ROA.361). In fact, he always received positive performance reviews. (ROA.359-360, 384-390). Birdville ISD awarded Mr. Hawthorne with the "Touch of Class Award" in 2012-13, 2018-19 and 2020-21. (ROA.391-393). The award is given to BISD employees "for making a difference in the lives of others." (ROA.391). Since 2016, Shelly Freeman ("Freeman"), as the Director of Purchasing, worked with Mr. Hawthorne. (ROA.360, 362). Ms. Freeman reported to Katie Bowman ("Bowman"), Assistant Superintendent for Finance and Auxiliary Services.[1] (ROA.360-361, 365). Plaintiff was employed by BISD between April 2010 and January 2022 when he submitted his resignation because of his demotion by Bowman. (ROA.358, 447).

Mr. Hawthorne, while working with Freeman was subjected to ongoing sexual harassment by Freeman which created an intimidating, offensive and hostile work environment for Mr. Hawthorne due to her continuous comments to Mr. Hawthorne regarding her sexual relationship with her husband. (ROA.355-356,

---

[1] Bowman and Freeman are "friends" outside of work and previously worked together.

358, 448). Freeman told Mr. Hawthorne about when she had sex with her husband. (ROA.356, 448). Freeman often complained about being "sore" from the sex she had with her husband the night before. (ROA.448). Freeman would say that she did not want to have sex but that her husband just would not leave her alone. (ROA.448). She made statements to Mr. Hawthorne asking about his sex life which he would ignore and just not answer and/or change the subject. (ROA.355-356, 448). This ongoing "sex talk" from Freeman caused Mr. Hawthorne to dread going to work if he knew he would have to interact with Freeman as he never knew if he would have to hear about what happened the previous night in the Freeman bedroom. (ROA.448).

Freeman also frequently told Mr. Hawthorne about her problematic children and bragged about the extreme forms of parental discipline that she imposed on them – including locking up one of her children in a cage because he was so out of control that he ate through one of her mattresses. (ROA.356, 366, 448). Freeman told Mr. Hawthorne about her children's toilet habits and how they liked to smear "poop" all over the walls of her home. (ROA.366, 448).

Although Mr. Hawthorne felt intimidated and uncomfortable when he had to work directly with Freeman because of her ongoing talk about her sex and personal life, he did not initially do anything about it because he was concerned that Freeman and Bowman would target him for retaliation if he complained about Freeman's

unwelcome "oversharing." (ROA.355-357, 448).

During late September 2018, Mr. Hawthorne expressed interest in coaching the BISD freshman girls' basketball team. (ROA.366, 448-449). The coach of the team responded positively to the suggestion. (ROA.366, 449). Mr. Hawthorne was also interested because the job would provide a source of added income in the approximate amount of $8000.00 per season. (ROA.366, 368, 449). However, Freeman informed Mr. Hawthorne via email on October 11, 2018, that both she and Bowman would not approve such a request and had informed the athletic department that the school would have to consider other options. (ROA.416, 449).

In December 2018, BISD posted a vacancy for the position of Director of Transportation and Mr. Hawthorne applied for the position. (ROA.364, 449). He submitted nine (9) letters of recommendation from both male and female employees of BISD. (ROA.369, 449). Bowman was the ultimate decisionmaker as to who would get the job because they would be reporting to her. (ROA.368). Bowman chose a woman, Sherry Nguyen[2] for the position. (ROA.364, 369, 449).

Mr. Hawthorne's salary at Birdville ISD was determined based on his job classification, MT-8, which contained supervisors in the child nutrition, facilities, and transportation departments. (ROA.396-398). Under MT-8, a minimum,

---

[2] According to the BISD website, visited on December 1, 2023, all employees working for Katie Bowman in the Finance and Federal Programs Department (25 employees) are female except for one individual.

midpoint, and maximum hourly pay is established, and each individual classified as MT-8 is placed at some point on the salary scale, with most individuals trending towards the midpoint. (ROA.359, 398).

Freeman gave Mr. Hawthorne positive employee evaluations but continued to pay him at lower than the midpoint of his "step," M-8. (ROA.398, 449). After Bowman and Freeman denied Mr. Hawthorne the promotional opportunity and the opportunity to make more money as a coach, Mr. Hawthorne began to wonder if he was being discriminated against by Bowman and Freeman based on his sex. (ROA.209, 352, 449). He contacted Rick Tice in BISD Human Resources ("HR") and asked why he was not being paid for the job he was doing. (ROA.417, 449). Mr. Tice simply responded with information about his pay rate and where it stood in the M-8 tier. (ROA.417, 449).

In April 2021, the BISD School Board approved an increase in pay for every BISD employee for the upcoming 2021-2022 school year. (ROA.421-422). Mr. Hawthorne emailed HR on June 30, 2021, requesting his updated salary information. (ROA.420). In July 2021, HR confirmed via email that Mr. Hawthorne's pay would be increasing from a rate of $219.96 per diem to $254.60 per diem and that Bowman approved the rate increase. (ROA.419, 450). However, Mr. Hawthorne never received that raise.

On August 9, 2021, Bowman informed Mr. Hawthorne via email that the

$254.00 per diem was incorrect and would not be his salary. (ROA.423, 449-450). Mr. Hawthorne's raise was reduced to a rate of $238.21 per diem. (ROA.394, 450). Mr. Hawthorne inquired about the rate change to both Freeman and Bowman, but he never got a response. (ROA.450). Mr. Hawthorne was concerned that he was being discriminated against because of the way that Freeman talked to him and that the reduced raise was a product of the discrimination. (ROA.357, 450). The reduced raise Mr. Hawthorne was given, according to BISD's pay scale, was more appropriate for a BISD employee with 3-4 years' work experience rather than the 10-11 years of seniority of Mr. Hawthorne. (ROA.396, 398). When asked in his deposition, Mr. Hawthorne stated that there were multiple women paid at a higher rate than him, and that he could not name them all. (ROA.209). Mr. Hawthorne was paid at an hourly rate of $27.49 before the April rate increase, and this pay was adjusted to an hourly rate of $29.78 after the April rate increase. (ROA.396). According to the Birdville ISD salary schedule, the minimum hourly rate for an MT-8 employee was $29.06 and the midpoint was $35.10. (ROA.398).

Mr. Hawthorne was upset with the reduced raise and the treatment from Ms. Bowman and Ms. Freeman and on August 9, 2021, contacted HR about the reduced raise and treatment, believing he was again the victim of discrimination by Bowman and Freeman. (ROA.430-431, 450). Mr. Hawthorne was awaiting a response to his inquiry about his salary when he was called to a meeting with HR and Bowman on

August 17, 2021.[3] (ROA.373, 450). Mr. Hawthorne assumed it was to discuss his salary but instead he was told that he was being investigated for claims of sexual harassment and for creating a hostile work environment and was placed on paid administrative leave. (ROA.397, 450). Mr. Hawthorne was told to turn in his badge and keys and leave the BISD property. (ROA.353, 450). Mr. Hawthorne learned later that on or around August 5, 2021, Jordan Bryan ("Bryan"), an administrative assistant who worked in an office adjacent to Mr. Hawthorne, had filed a complaint of sexual harassment against him with Bowman and Freeman. (ROA.351, 425-428). Bowman and Freeman urged Bryan to write down her concerns in order for Bowman to begin an investigation of Mr. Hawthorne. (ROA.382, 432-433). Bryan did not file, nor was she told by Freeman nor Bowman to file an official complaint with the district, she was simply asked to write and send notes on Hawthorne. (ROA.383). No one from BISD interviewed Mr. Hawthorne about Bryan's allegations prior to putting him on administrative leave. (ROA.373, 450).

During this period, Mr. Hawthorne received multiple phone calls from fellow BISD employees who all said they heard that Mr. Hawthorne was being fired for sexual harassment. (ROA.354).

Mr. Hawthorne retained the undersigned counsel on August 21, 2021. (ROA.406). Mr. Hawthorne retained counsel out of concern that Freeman and

---

[3]He never received a satisfactory response about the change in the per diem rate of his pay.

7

Bowman initiated an investigation for claims of sexual harassment out of retaliation for Mr. Hawthorne's inquiries into his salary since they refused to provide any details regarding Bryan's accusation or interview him regarding her allegations. (ROA.450). On August 24, 2021, the undersigned counsel informed BISD via letter that Mr. Hawthorne had retained an attorney and to send all future communications directly to counsel. (ROA.407-408).

A telephonic hearing was held on September 1, 2021, in which Paige Curry from HR finally interviewed Mr. Hawthorne about the allegations. (ROA.372-373, 409-411, 450). Nine employees in the warehouse had already been interviewed regarding Mr. Hawthorne before he was interviewed about the allegations. (ROA.355). Mr. Hawthorne denied all of the allegations presented to him in the telephonic hearing, including questions unrelated to sexual harassment. (ROA.380, 450). Mr. Hawthorne was invited to return to work shortly after the hearing. However, Bowman informed Mr. Hawthorne that she made the decision to reassign him to a lower paying job with less seniority. (ROA.374-375, 414-415, 450).

Approximately five weeks after Mr. Hawthorne returned to work, Bowman wrote him up on October 8, 2021, for "creating a negative work environment" without offering any specific incidents in the write-up but instead used generic accusations. (ROA.375, 412-413, 450).

Mr. Hawthorne gave BISD his two weeks' notice on January 3, 2022.

8

(ROA.429, 450). Shortly after he submitted his resignation, BISD tried to force Mr. Hawthorne to write up a synopsis of why he was leaving the district and told him that it was policy and therefore required for him to do so. (ROA.429). Mr. Hawthorne refused to do so on the advice of his legal counsel. On April 7, 2022, Mr. Hawthorne filed a Charge 5 with the Equal Employment Opportunity Commission. (ROA.434-440).

In July of 2021, Assistant Director of Purchasing, Marina Williams ("Williams"), submitted a complaint along with her letter of resignation because of the unprofessional behavior and lack of support she received from her supervisor, also Shelley Freeman. (ROA.441, 444-445, 452). According to Williams, Freeman told other members of her team that she thought Mr. Hawthorne was stupid, a bad manager, and that she wanted to get rid of him. (ROA.444-445, 452-453). Williams also stated in her resignation that Freeman asked her team members for any possible reasons she could use to write Mr. Hawthorne up to terminate his employment. (ROA.444, 452). Williams complained to Bowman about Freeman while employed but Bowman never asked Williams to write down her concern and nothing changed with Freeman. (ROA.441, 444-446). Williams's official complaint regarding Freeman stated that Freeman was unprofessional and did not support Williams in her position or return her calls. (ROA.444).

Bowman finally investigated Williams' allegations about Freeman in July of

2021 after Williams submitted her resignation. (ROA.376). Bowman did not speak with Williams before her resignation; instead, she consulted with Freeman about her side of the story before speaking with others. (ROA.376). When Bowman did speak with outside parties, she consulted two other women, Amanda Garcia, and Erika Ala, and no one else. (ROA.376). Freeman denied all allegations and Bowman accepted her denial because "it was [Williams]'s word against [Freeman]'s word." (ROA.377). Freeman did not receive any form of disciplinary action from Bowman or otherwise. (ROA.377-379).

On March 23, 2023, Plaintiff sued Defendant for discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and retaliation pursuant to 42 U.S.C. § 2000e and Texas Labor Code § 21.051. (ROA.7-26).

On December 20, 2023, Defendant filed its Motion for Summary Judgment, alleging that Hawthorne did not prove sufficient facts to create a genuine issue of fact to support any liability by BISD. (ROA.168-170).

On April 12, 2024, the district court issued an order granting BISD's Motion for Summary Judgment and dismissed Hawthorne's claims against BISD. (ROA.464-483). Hawthorne filed his notice of appeal on May 5, 2024. (ROA.489-491).

# SUMMARY OF THE ARGUMENT

In reviewing de novo the granting of motions for summary judgment, the Court must accord all reasonable inferences in favor of the non-movant-appellant. The district court dismissed Mr. Hawthorne's lawsuit for three (3) reasons. First, the district court ruled that Mr. Hawthorn questioning his lack of salary increase did not constitute a protected activity that employers cannot retaliate against. (ROA.111-113). Second, the district court held that Freeman was Mr. Hawthorne's direct supervisor even though Katie Bowman was the ultimate decision-maker regarding their employment status. The Court reasoned that Freeman was not a nearly identical comparator for establishing pretext. (ROA.475-477). Third, the district court ruled that Mr. Hawthorne did not provide evidence that the harassment he received from Freeman and Bowman was based on sex. (ROA.477-482).

In Point of Error No. 1, the district court erred when it held that Mr. Hawthorne questioning his salary increase did not constitute a protected activity that employers cannot retaliate against. Mr. Hawthorne questioned his salary on multiple occasions because he was being paid below the midpoint of his salary range (M-8) for someone of his experience and title and called the failure to be paid appropriately "retaliatory" in his deposition. The district court ignored the relevant case law and determined that questioning his lack of salary increase was not a protected activity. The District Court also argued that Mr. Hawthorne did not have a reasonable belief

that he was discriminated against because Mr. Hawthorne was unable to provide specific reasons supporting his belief. However, there is no legal requirement for an employee to provide exact reasoning for his belief that he is being discriminated against.

In Point of Error No. 2, the district court erred when it held that Shelley Freeman was not a nearly identical comparator to Hawthorne. The district court ignored the fact that both reported to the same person and that both held supervisory positions. The district court ignored relevant case law that states a nearly identical comparator should have the same ultimate decisionmaker regarding employment status. Bowman conducted the investigation of the complaint about Hawthorne and also the complaint regarding Freeman. Bowman demoted Hawthorne. The district court intentionally misconstrued Mr. Hawthorne's argument by not looking at Bowman, the ultimate decisionmaker for both adverse employment actions.

In Point of Error No. 3, the district court erred when it held that Mr. Hawthorne did not establish a genuine dispute of material fact with respect to his claim of a hostile work environment. The district court held that Freeman harassed men and women with the same inappropriate, ongoing sex talk and therefore Mr. Hawthorne could not have been discriminated against because of his sex. However, the complaint actually registered against Freeman by Marina Williams was that Freeman was unprofessional, failed to support Williams in her position, and that

Freeman tried to rally her office to find a reason to fire Mr. Hawthorne. Mr. Hawthorne's complaint related to the ongoing sex talk and sexual innuendos expressed by Freeman almost daily at work.

The evidence presented by Hawthorne was sufficient to withstand summary judgment and move forward with the trial.

## ARGUMENT

### I.     Standards of Review

The Court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). A Defendant moving for summary judgment on a Plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the Plaintiff's claim or (2) showing there is no evidence to support an essential element of Plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Defendant cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential element of his claim. Rather, Defendant must demonstrate the absence of a genuine factual dispute. *See Celotex Corp.*, 477 U.S. at 324-25. Only if Defendant meets its burden is Plaintiff required to respond by summary-judgment proof to show a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e)(3).

In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to the Plaintiff as the nonmovant. *Tolan v. Cotton*, 576 U.S. 650, 656 (2014). The court must also resolve all reasonable doubts about the facts in favor of Plaintiff as the non-movant. *Tolan*, 576. U.S. at 656; *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005). Reasonable inferences are to be drawn in favor of the non-moving party. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007*)*. The court must not decide any factual issues it finds in the record; if any are present, the motion should be denied. *Id*. "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Id*. (citing *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970); *Marsden v. Patane*, 380 F.2d 489, 491 (5th Cir. 1967)).

II.    Genuine Disputes of Material Fact Exist with Respect to Mr. Hawthorne's Retaliation Claim.

    A.    James Hawthorne has Established a *Prima Facie* Claim for Retaliation Against Birdville ISD as a Matter of Law.

To establish a prima facie retaliation case, a plaintiff must show: (1) he was engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse

employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). "Importantly, a plaintiff need not demonstrate that the practice was actually unlawful for his opposition to be a protected activity; rather, it is enough that the plaintiff reasonably believed the practice was unlawful." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021). The Equal Employment Opportunity Commission ("EEOC") provides a listing of issues for which it is unlawful for employers to retaliate against employees, these include:

• filing or being a witness in an EEO charge, complaint, investigation, or lawsuit

• communicating with a supervisor or manager about employment discrimination, including harassment

• answering questions during an employer investigation of alleged harassment

• refusing to follow orders that would result in discrimination.

• resisting sexual advances or intervening to protect others.

• requesting accommodation of a disability or for a religious practice

• asking managers or co-workers about salary information to uncover potentially discriminatory wages.

Protected activity "is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Yet, "[n]ot every complaint garners its author protection under Title VII." *See Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006), *citing Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (stating that commenting about absence of black employees, without alleging discrimination, was insufficient to qualify as protected activity). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick*, 437 F.3d at 1232.

Mr. Hawthorne asked his supervisors and his co-workers in HR for an explanation regarding why he was being paid at the bottom of his "step" and not receiving raises to move him up in his step. Based on the ongoing patterns that started in 2018, Hawthorne believed he was not receiving raises that reflected his seniority in his job scale because he was being discriminated against as a white male by both Freeman and Bowman. Hawthorne was also subject to a false claim of sexual harassment which manifested just at the time of Mr. Hawthorne's questioning of the salary increase revocation. Mr. Hawthorne, in the September 1, 2021 telephonic meeting denied all allegations made by Bryan and Bryan's claims mysteriously just

disappeared when they could not be proven. Instead, Bowman demoted Mr. Hawthorne and wrote him up for unspecified allegations that he "created a negative work environment."

A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"). *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. *Id*. A tangible employment decision requires an official act of the enterprise, a company act. *Id*. The decision in most cases is documented in official company records and may be subject to review by higher level supervisors. *E.g., Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). "Temporal proximity between the protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *See Porter* at 948.

17

In this case, Mr. Hawthorne was passed over repeatedly for job opportunities, a chance to earn additional income, increases in salary and was being paid, according to BISD's own pay scale, at the minimum pay point for an MT-8 employee, instead of being paid closer to the midpoint in line with the 13 years of seniority that Mr. Hawthorne held due to Bowman's and Freeman's interference. Bowman and Freeman continuously intervened from 2018 onward to keep Mr. Hawthorne from earning more money and being promoted. In July-August 2021, when Mr. Hawthorne was finally going to get a raise more in line with his seniority, a claim of sexual harassment appeared and without interviewing Mr. Hawthorne, Bowman intervened and reduced his raise, and put him on administrative leave. After Mr. Hawthorne obtained legal counsel to protect himself, Bowman failed to get him terminated since the sexual allegations against him were not able to be proven. Instead, she demoted him and six weeks later, prepared a "Write-Up" that had no specific allegations against him. Mr. Hawthorne felt he had no other option but to find other employment because he believed that the demotion was not going to be the end of the retaliation from Bowman.

B.     The District Court Erred When It Held That Hawthorne Did Not Establish a *Prima Facie* Claim for Retaliation.

The District Court argued that Mr. Hawthorne offered no summary judgment evidence to show that he reasonably believed that he was being discriminated against based on sex when he made inquiries about the not receiving raises. Specifically, the District Court argues that Mr. Hawthorne did not believe his wages evidenced discrimination because he "only identified other men who were paid differently from him, not any woman or other protected class member." The District Court also argued that Mr. Hawthorne did not have a reasonable belief that he was discriminated against because Mr. Hawthorne was unable to provide specific reasons supporting his belief.

Mr. Hawthorne stated in his deposition that that he knew of multiple women at his pay grade that were paid more than him, but he did not name them. The District Court noted that Mr. Hawthorne only mentioned men that received a higher salary than him in his deposition, but this is only part of the conversation. When asked if Mr. Hawthorne knew of any women at BISD that received a higher salary and Mr. Hawthorne replied that he knew of multiple women. The District Court considered only the first part of this conversation, while ignoring the rest, as justification to rule that Mr. Hawthorne did not reasonably believe that he received less pay because of his sex.

There is no legal requirement for an employee to provide exact reasoning for his belief that he is being discriminated against. The District Court decided that because Mr. Hawthorne believed he was discriminated against but claimed he did not specifically articulate the reasons for his belief in his deposition despite stating in his deposition that he believed the lack of salary increase was retaliatory and Plaintiff is not required to marshal evidence and prove his claim to satisfy the jurisdictional hurdle of establishing prima facie case. *Mission Independent School Dist. v. Garcia*, 372 S.W.3d 629, 634, 637 (Tex. 2012). The District Court has created additional hurdles with no basis in law for Mr. Hawthorne to overcome in order to establish his *prima facie* case.

III.    A Genuine Dispute of Material Fact Exists with Respect to Whether Shelley Freeman is a "Nearly Identical Comparator."

    A.    Mr. Hawthorne Properly Established Freeman as a "Nearly Identical Comparator."

After the Plaintiff establishes a *prima facie* case of retaliation, the Defendant must then provide a "legitimate, no-retaliatory reason" for the employment action. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021). If the Defendant does so, the burden shifts to the Plaintiff to demonstrate that the Defendant's stated reason is a pretext for unlawful retaliation. *Gorman v. Verizon Wireless Tex.*,

L.L.C., 753 F.3d 165, 171 (5th Cir. 2014). A prima facie case, combined with enough evidence to assert the falsity of an employer's asserted justification, may demonstrate a genuine issue of material fact. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000).

A Plaintiff can establish pretext by showing disparate treatment with respect to a comparator or presenting evidence that his employer's proffered explanation for an adverse employment decision is "false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-638 (5th Cir. 2011). A plaintiff can establish a showing of disparate treatment by demonstrating that an employee in "nearly identical" circumstances, but outside of Plaintiff's protected class, was treated differently than plaintiff. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Comparable situations can be considered "nearly identical" circumstances when the employees being compared "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Nearly identical does not mean identical, "it is sufficient that the **ultimate decision-maker** as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor. *Id.* at 260-261 (emphasis added). Additionally, while the

plaintiff's conduct should be nearly identical to the comparator, it does not need to be in the same category of company code but instead may turn on the comparable seriousness of the offense. *Id*. at 260-261; *Ray v. UPS*, 587 F. App'x 182, 194 (5th Cir. 2014).

Shelley Freeman is a "nearly identical" comparator for Mr. Hawthorne because Katie Bowman was the **ultimate decisionmaker** in both the Hawthorne and Freeman investigation, both Mr. Hawthorne and Freeman held supervisory positions at Birdville ISD, and both ultimately reported to Bowman. Because Bowman was the ultimate decision-maker in both investigations, Freeman is a nearly identical comparator.

The complaints filed against both Freeman and Mr. Hawthorne were similar in nature. Both investigations were filed by a direct report and stemmed from allegations of inappropriate conversations in the office. Williams reported directly to Freeman and Bryan reported directly to Mr. Hawthorne.

Mr. Hawthorne had no prior violations or write-up before the investigation in September of 2021. Mr. Hawthorne always received positive performance evaluations from Freeman and received multiple Touch of Class awards from Birdville ISD. Because Mr. Hawthorne had no disciplinary violations, he was in a similar or better position regarding prior violations than Freeman before the investigations.

Bowman was the **ultimate decision-maker** in both Freeman's and Mr. Hawthorne's investigations. These investigations were due to complaints from direct reports dealing with conversations that made them uncomfortable. Mr. Hawthorne had no disciplinary actions on record and Freeman may or may not have a disciplinary record. These two investigations should have been virtually identical in nature. Instead, Bowman handled these investigations in nearly the opposite manner.

In the Freeman investigation, Bowman did not consult with Williams before her resignation regarding her complaint. Bowman first consulted with Freeman to get her side of the story before speaking with any of the other parties to the investigation. When Bowman did speak with other parties, she spoke with only two other female employees and testified in her deposition that this was a case of Freeman's word against Williams's.

In Mr. Hawthorne's investigation, he was first placed on administrative leave without warning or a chance to defend himself. Bowman had urged Bryan, the person who made the complaint, to write down her complaint so that she could bring it forward. Bowman interviewed nine (9) other employees around the warehouse, including Bryan, before interviewing Mr. Hawthorne. Even though the investigation yielded no evidence of sexual harassment, Bowman demoted Hawthorne to a position that moved him to a new location with reduced pay and no

supervisory authority. Bowman then sent Mr. Hawthorne an official letter of reprimand based on unspecified allegations of creating a negative work environment.

Bowman determined that neither the Freeman no the Hawthorne investigation yielded results that corroborated the initial complaints. Yet, Mr. Hawthorne was placed on administrative leave, demoted to a position with lower pay, no supervisory authority, and he received a reprimand for findings unrelated to the investigation. Freeman was given no reprimand or warning and was never placed on leave or demoted. The difference in Bowman's handling of these investigations is stark, and the clearest reason for this difference is that Mr. Hawthorne is a male and Freeman is a female. Birdville ISD's reason for demoting and reprimanding Mr. Hawthorne is simply pretext.

B.    The District Court Erred When It Held Freeman is Not a "Nearly Identical Comparator."

The District Court argued that Mr. Hawthorne offered no summary judgment evidence to show that Mr. Hawthorne and Freeman were similarly situated enough to be considered "nearly identical comparators." The District Court asserted that the fact Mr. Hawthorne and Freeman both held supervisory positions at BISD was not enough to prove they had similar job responsibilities.

Mr. Hawthorne and Freeman do not need to be exactly identical comparators, simply nearly identical comparators. Mr. Hawthorne and Freeman were both tasked with supervising a team of staff, and while they did not have the same job role, the responsibilities were similar. Bowman conducted both Mr. Hawthorne's and Freeman's investigations, and she was the **ultimate decision-maker** regarding both of their employment statuses. Mr. Hawthorne and Freeman were in comparably similar circumstances, with their sex as the biggest differentiating factor.

In its memorandum, the District Court states that it is well settled that a supervisor cannot be used as a comparator, citing only one case, *Amezquita v. Ben. Tex., Inc.*, as an example of a case where the court ruled that an immediate supervisor was not a comparator. 264 F. App'x 379, 385-386 (5th Cir. 2008); (ROA.477). However, further reading of *Amezquita*, the employee was an accounting executive with no management responsibilities, and the proffered comparator was the only management personnel in the office. *Amezquita*, 264 Fed. App'x. at 385-386. The case at bar presents a distinctly different circumstance, with both Mr. Hawthorne and Freeman having similar supervisory duties.

IV.    Genuine Disputes of Material Fact Exist with Respect to Mr. Hawthorne's
       Discrimination Claim.

A.    Mr. Hawthorne Established a Genuine Dispute of Material Fact Regarding a Hostile Work Environment.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . . sex." A hostile work environment due to sexual harassment is discrimination based on sex. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022) (quoting 42 U.S.C. § 2000e-5(e)(1)).

A Plaintiff who alleges sexual harassment may establish a violation of Title VII when the harassment (1) involves the conditioning of concrete employment benefits on sexual favors (so-called "quid pro quo" sexual harassment); or (2) creates a hostile or offensive working environment, even when the harassment does not affect the economic benefits of the job. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-52 (1998).

To establish a prima facie case for a hostile work environment, the claimant must show that: (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment was so severe or pervasive enough to affect the terms, conditions, or

26

privileges of employment. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). In order to meet the "severe or pervasive" element for a Title VII sexual harassment hostile work environment claim, "the work environment must be both objectively and subjectively offensive, one that a reasonable person would find offensive, and one that the victim did in fact perceive to be so." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

BISD is an employer within the meaning of Title VII, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Plaintiff is an employee within the meaning of Title VII.

Plaintiff is a white male. A Plaintiff may recover from his employer in a sexual harassment suit based on the conduct of a supervisor. In the case of Mr. Hawthorne, he was exposed to ongoing sexual chatter from Shelley Freeman ("Freeman") regarding her sex life, how her husband often forced her to have sex and that so much sex made her "sore." Freeman also made veiled inquiries regarding Hawthorne's private life with this wife which Mr. Hawthorne did his best to ignore. Freeman's actions created a hostile work environment under which Plaintiff was forced to work. Plaintiff feared if he reported Freeman, he would experience retaliation. While Freeman did share details of her sex life with others, it is the

totality of Freeman's actions, in conjunction with Bowman, that created a hostile work environment for Mr. Hawthorne. Freeman solicited other warehouse employees for any way to sabotage Mr. Hawthorne's employment, Freeman and Bowman actively denied Mr. Hawthorne additional job opportunities, and Freeman and Bowman coaxed Bryan into filing a complaint against Mr. Hawthorne.

When Mr. Hawthorne finally stood up for himself in 2021 and demanded answers about the rescinded raise, which he believed (based on past denials of job opportunities from Bowman and Freeman) to be discriminatory in nature; Bowman and Freeman utilized a coincidentally timed complaint of sexual harassment from Jordan Bryan to suspend Mr. Hawthorne, write him up and ultimately demote him.

Shelley Freeman and Katie Bowman, both white females, were empowered by Defendant BISD to take tangible employment actions against Plaintiff which they did in the form of denying him opportunities for advancement, reversing his raise, writing him up for unspecified and vague accusations and ultimately demoting him.

BISD created an ongoing hostile work environment through Defendant's employees Shelly Freeman and Katie Bowman because of Plaintiff's sex. The conduct was so severe that it ultimately caused Plaintiff to be demoted and altered the terms and conditions of his employment such that Plaintiff felt he had no option but to resign in January 2022.

B.    The District Court Erred When It Held Hawthorne Failed to Show Harassment that Altered the Conditions of His Employment

The District Court determined that because Freeman provided the same kind of harassment to both men and women, Mr. Hawthorne could not have been discriminated against because of his sex. The District Court ignored the clear actions by Freeman that created a hostile work environment for Mr. Hawthorne based on sex.

Mr. Hawthorne stated in his complaint and his deposition that he believed he was subjected to a hostile work environment because of the combined actions of Bowman and Freeman. Freeman specifically singled out Mr. Hawthorne as someone she was seeking to get fired, and the pervasive gratuitous conversations with Mr. Hawthorne that made him dread coming to work is only part of the hostile behavior.

While the District Court asserts that because Williams mentioned that Freeman would overshare there was a clear demonstration that Freeman's behavior towards men and women were equal, the Court assumes that the volume and severity of the conversations were equal. In Williams's official complaint to BISD, she did not state that Freeman was oversharing information. She complained about Freeman's extreme lack of professionalism, the fact that Freeman was actively speaking badly about Mr. Hawthorne and that Freeman was looking for an excuse

to get him fired, and that Freeman would not provide any administrative assistance as requested to ensure Williams could fulfill her job role effectively.

The District Court looked only at Freeman's behavior when analyzing Mr. Hawthorne's hostile work environment claim. Bowman conducted the investigation of both Williams's complaint towards Freeman and Bryan's complaint towards Mr. Hawthorne. Bowman's investigation of Freeman, who is outside of Mr. Hawthorne's protected class, involved an interview of Freeman first, no interview with Williams, the person that filed the complaint, and an interview with only two other employees. In contrast, Bowman interviewed nine other employees, including Bryan, the person that filed the complaint, before finally interviewing Mr. Hawthorne, who was put on administrative leave during the investigation.

It was the combined behavior of Bowman and Freeman that created a hostile work environment for Mr. Hawthorne, not just Freeman's gratuitous oversharing.

## CONCLUSION

For the foregoing reasons, Mr. Hawthorne prays this Court REVERSE the district court's granting of the Defendant's Motion for Summary Judgment in favor of Birdville Independent School District and remand the case back to district court for further proceedings in accordance with this Court's decision.

June 26, 2024

SUBMITTED BY:

***/s/ Debra Edmondson***
Debra Edmondson
State Bar No. 24045824
debra@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
325 Miron Dr., Suite 100
Southlake, Texas 76092

***/s/ Joseph Glover***
Joseph Glover
State Bar No. 24131334
josephg@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
325 Miron Dr., Suite 100
Southlake, Texas 76092

# CERTIFICATE OF SERVICE

I certify that on June 26, 2024, the foregoing document was served, via the Court's

CM/ECF Document Filing System, upon the following registered CM/ECF users:

Meredith Prykryl Walker
Walsh Gallegos Treviño Kyle & Robinson P.C.
105 Decker Court
Suite 700
Irving, TX 75062

Attorney for Appellee Birdville Independent School District

/S/Debra Edmondson
Debra Edmondson

# CERTIFICATE OF COMPLIANCE

3.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:

this document contains 6615 words.

4.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2405 in 14-point Times New Roman font.

S/Debra Edmondson
Debra Edmondson