Case No. 24-10398

In the United States Court of Appeals for the Fifth Circuit

---

JAMES HAWTHORNE,

*Plaintiff-Appellant*,

v.

BIRDVILLE INDEPENDENT SCHOOL DISTRICT,

*Defendant-Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-00301

---

**BRIEF OF APPELLEE BIRDVILLE INDEPENDENT SCHOOL DISTRICT**

---

Meredith Prykryl Walker
WALSH GALLEGOS KYLE
ROBINSON & ROALSON P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com

*Attorneys for Defendant-Appellee*
*Birdville Independent School District*

In the United States Court of Appeals for the Fifth Circuit

---

JAMES HAWTHORNE,

*Plaintiff-Appellant*,

v.

BIRDVILLE INDEPENDENT SCHOOL DISTRICT,

*Defendant-Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-00301

---

## APPELLEE BIRDVILLE INDEPENDENT SCHOOL DISTRICT'S CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| James Hawthorne | *Plaintiff-Appellant* |
| Birdville Independent School District | *Defendant-Appellee* |
| Debra Edmondson<br>Joseph Glover<br>THE EDMONDSON LAW FIRM PLLC | *Attorneys for Plaintiff-Appellant* |

Meredith Prykryl Walker
WALSH GALLEGOS KYLE
ROBINSON & ROALSON P.C.

*Attorneys for Defendant-Appellee*

Property Casualty Alliance
of Texas

*Defendant-Appellee's Risk Retention
Group*

By: /s/ Meredith Prykryl Walker
    Meredith Prykryl Walker
    State Bar No. 24056487

*Attorneys for Defendant-Appellee
Birdville Independent School District*

## STATEMENT OF ORAL ARGUMENT

Appellee Birdville Independent School District (Birdville ISD or the School District) believes oral argument would be helpful in this case to assist the Court in analyzing the issues presented in this case.

# TABLE OF CONTENTS

Statement of Oral Argument ................................................................. iii

Table of Contents ............................................................................. iv

Table of Authorities ......................................................................... vii

Statement of Issues ............................................................................. 1

Statement of the Case ......................................................................... 2

    A. Factual Background ................................................................... 2

    B. Procedural Background ............................................................ 10

Summary of the Argument ................................................................ 12

Argument and Authorities ................................................................ 14

    A. The Standard of Review .......................................................... 14

    B. James Hawthorne failed to provide the Court with citations
       to the Record on Appeal in support of his arguments ................ 14

    C. The district court correctly found James Hawthorne
       failed to establish a *prima facie* case of retaliation ................... 15

         1. James Hawthrone's inquiries regarding his
            salary cannot credibly be described as opposing
            a discriminatory employment practice ........................... 15

         2. James Hawthrone failed to adduce evidence reflecting
            he reasonably believed his pay was discriminatory ........ 18

3.    The timeline of events reflects no causal
connection between any employment
action and Hawthorne's alleged protected activity........................22

D.  The district court correctly held James Hawthorne failed to establish
pretext on the part of Birdville Independent School District.....................25

1.    James Hawthorne's pretext argument effectively forecloses
his ability to prove the requisite "but for" causation .....................25

2.    The Purchasing Director is not a proper comparator
to James Hawthorne as a matter of law...........................................26

3.    The Purchasing Director is not a proper comparator
for purposes of the Court's pretext analysis ...................................27

a.    The Associate Superintendent was not the
ultimate decisionmaker for James Hawthorne ..................28

b.    James Hawthorne failed to establish any similarity
between his supervisory position and the supervisory
position held by the Purchasing Director ...........................30

c.    James Hawthorne reported to the Purchasing
Director—not the Associate Superintendent......................31

d.    James Hawthorne and the Purchasing Director
were not accused of engaging in similar conduct ..............31

E.  The district court correctly determined James Hawthorne
failed to support his claim for a hostile work environment ........................34

1.    Hawthorne's allegations against the Purchasing Director
do not support a hostile work environment claim..........................35

2.    Plaintiff cannot demonstrate that the Purchasing
Director's alleged actions are based on his sex .............................38

3.    James Hawthorne cannot demonstrate that
        the Purchasing Director's alleged actions
        altered the conditions of his employment ......................................40

    F.   Conclusion.................................................................................................40

Certificate of Service ..............................................................................41

Certificate of Privacy Redactions and Virus Scanning............................................42

Certificate of Compliance with Rule 32(a)..............................................................42

# TABLE OF AUTHORITIES

<u>**CASES**</u>

*Amezquita v. Beneficial Tex., Inc.*,
   264 Fed. App'x 379 (5th Cir. 2008) ....................................................27

*Cabral v. Brennan*,
   853 F.3d 763 (5th Cir. 2017) ..............................................................15

*Crosby v. Computer Sci. Corp.*,
   470 Fed. App'x 307 (5th Cir. 2012) (per curiam) ...............................27

*Cunningham v. Circle 8 Crane Servs., L.L.C.*,
   64 F.4th 597 (5th Cir. 2023) ...............................................................14

*Full House Resorts, Inc. v. Boggs & Poole Contracting Group.*, No. 1:14cv223,
   2015 WL 1427284 (S.D. Miss. Mar. 27, 2015)....................................22

*Garcia v. Prof'l Contract Servs., Inc.*,
   938 F.3d 236 (5th Cir. 2019) ...............................................................28

*Greer v. Armstrong World Indus., Inc.*, No. 5:09–cv–20,
   2010 WL 2926043 (S.D. Miss. Jul. 21, 2010)......................................27

*Lauren C. v. Lewisville Indep. Sch. Dist.*,
   904 F.3d 363 (5th Cir. 2018) ...............................................................22

*Lee v. Ks. City S. Ry. Co.*,
   574 F.3d 253 (5th Cir. 2009) ........................................... 28, 30, 31, 34

*Lyons v. Katy Indep. Sch. Dist.*,
   964 F.3d 298 (5th Cir. 2020) ......................................................... 22, 25

*Mandawala v. Baptist Sch. of Health Prof'ls*, No. 23-50258,
   2024 WL 1461943 (5th Cir. Apr. 4, 2024)...........................................22

*Mission Indep. Sch. Dist. v. Garcia*,
   372 S.W.3d 629 (Tex. 2012) ................................................................21

*Muslow v. La. State Univ. & Agric.& Mech. Coll. Bd.*, No. 22-30585,
   2023 WL 5498952 (5th Cir. Aug. 24, 2023) (per curiam) ...................17

*Reddick v. Medtronic, Inc.*, No. 21-30169,
   2022 WL 715494 (5th Cir. Mar. 9, 2022) (per curiam) .......................14

*Saketkoo v. Adm'rs of Tulane Educ. Fund*,
   31 F.4th 990 (5th Cir. 2022) ..................................................... 34, 35, 40

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ...............................................................14

*Wallace v. Performance Contractors, Inc.*,
   57 F.4th 209 (5th Cir. 2023) .................................................................15

*Westfall v. Luna*, No. 4:15-cv-00874-O,
   2019 WL 3892438 (N.D. Tex. Aug. 19, 2019) ....................................21

## Statutes, Regulations, and Rules

Fed. R. Civ. P. 56 ...................................................................................22

# STATEMENT OF ISSUES

## Issue One

The district court correctly dismissed Plaintiff-Appellant James Hawthorne's (Hawthorne) retaliation claim as Hawthorne failed to make out a *prima facie* case of retaliation.

## Issue Two

The district court correctly dismissed Hawthorne's retaliation claim as Hawthorne failed to present evidence that the School District's legitimate, nonretaliatory reasons for taking employment action against him were pretext for discrimination.

## Issue Three

The district court correctly dismissed Hawthorne's hostile work environment claim as he failed to adduce evidence of severe or pervasive evidence based on his sex.

## STATEMENT OF THE CASE

### A.    Factual Background

Birdville ISD employed Hawthorne as the Warehouse Central Storage Supervisor from August 2012 until September 2021. (ROA.205). On or about September 13, 2021, the School District reassigned Hawthorne from his Warehouse Central Storage Supervisor position to Special Projects Liaison. (ROA.205, 212). Hawthorne held the Special Projects Liaison position until he reassigned on January 3, 2022. (ROA.141, 205, 217).

On June 30, 2021, Hawthorne sent an email to Mark Chapa, the School District's Coordinator of Human Resources/Auxiliary, Part-Time, Central Admin Paraprofessionals, inquiring about his pay for the 2021-2022 school year. (ROA.224). In response, on July 12, 2021, Human Resources Coordinator Chapa responded that Hawthorne would receive "a yearly increase of approximately $8,591.76." (ROA.223). Human Resources Coordinator Chapa, however, provided Hawthorne with the wrong information. (ROA.228, 305).

As explained by Katie Bowman, Associate Superintendent of Finance & Auxiliary Services, the School District engaged a third party to conduct a market survey of salaries for the 2021-2022 school year. (ROA.305). The third party

recommended a market adjustment in addition to the raise approved by the Board of Trustees in April 2021. (ROA.305). Associate Superintendent Bowman provided the recommended market adjustments to the School District's Human Resources Department for review. (ROA.305). The Human Resources Department subsequently reviewed the recommended market adjustments and lowered the market adjustment percentage for all individuals in the MT-8 paygrade, including Hawthorne. (ROA.310). Human Resources Coordinator Chapa, however, provided the recommended market adjustment to Hawthorne before the Human Resources Department reviewed and lowered the recommendation. (ROA.223).

While Hawthorne did not receive the amount of raise Human Resources Coordinator Chapa incorrectly quoted, Hawthorne did receive a raise for the 2021-2022 school year, which was identical to the raise received by the other individuals within the MT-8 paygrade. (ROA.230, 306). More specifically, each employee received an hourly raise of $1.053, which accounted for the Board of Trustees' three-percent increase, and a market adjustment of $1.23 for a total raise of $2.283 (rounded to $2.28) per hour. (ROA.230, 306).

CONTINUED ON NEXT PAGE

3

| | Years of Experience | Pay Grade | Days Worked | Hourly Rate | Hourly rate change |
|---|---|---|---|---|---|
| James Hawthorne 2020-21 | 10.00 | MT-8 | 248 | 27.49 | |
| James Hawthorne 2021-22 | 11.00 | MT-8 | 248 | 29.78 | 2.28 |
| Gena Hosler 2020-21 | 23.00 | MT-8 | 236 | 33.42 | |
| Gena Hosler 2021-22 | 24.00 | MT-8 | 236 | 35.70 | 2.28 |
| Mark Gilliland 2020-21 | 34.00 | MT-8 | 248 | 32.84 | |
| Mark Gilliland 2021-22 | 35.00 | MT-8 | 248 | 35.13 | 2.28 |
| Travis Edwards 2020-21 | 19.00 | MT-8 | 248 | 27.40 | |
| Travis Edwards 2021-22 | 20.00 | MT-8 | 248 | 29.68 | 2.28 |
| Sheri Duncan 2020-21 | 26.00 | MT-8 | 205 | 32.09 | |
| Sheri Duncan 2021-22 | 27.00 | MT-8 | 205 | 33.64 | 1.55 |
| Kemberly Wiley 2020-21 | 26.00 | MT-8 | 236 | 28.06 | |
| Kemberly Wiley 2021-22 | 27.00 | MT-8 | 236 | 30.35 | 2.28 |
| Sammy Roberts 2020-21 | 13.00 | MT-8 | 236 | 26.16 | |
| Sammy Roberts 2021-22 | 14.00 | MT-8 | 236 | 28.44 | start date 3/9/20 |

(ROA.230). The only exception to this uniform raise was Sheri Duncan who worked significantly fewer days a year (*i.e.*, 205 days) than Hawthorne and the other individuals in the MT-8 paygrade (*i.e.*, 236 to 248 days). (ROA.230, 306).

Hawthorne had 11 years of experience for purposes of his salary with the School District. (ROA.230, 310-311). The School District hired Hawthorne on April 12, 2010, as a groundskeeper and extended Hawthorne three years of salary credit for experience outside of Birdville ISD. (ROA.310-311). Hawthorne was an at-will employee and did not have a contract with Birdville ISD. (ROA.311).

On Friday, August 6, 2021, at 9:46 p.m., Hawthorne emailed Associate Superintendent Bowman the information he received from Human Resources Coordinator Chapa. (ROA.228). Associate Superintendent Bowman was not aware

4

of the communication between Human Resources Coordinator Chapa and Hawthorne until she received Hawthorne's email, which she responded to on Monday, August 9, 2021, at 9:35 a.m. (ROA.228). By the time Hawthorne emailed Associate Superintendent Bowman on August 6, 2021, he had been paid on July 23, 2021, and his paycheck reflected his new hourly rate—not the hourly rate incorrectly quoted by Human Resources Coordinator Chapa. (ROA.231, 304-306).

On August 5, 2021, Hawthorne's Administrative Assistant, Jordan Bryan, reported concerns regarding Hawthorne to Shelley Freeman, the School District's Director of Purchasing and Hawthorne's supervisor. (ROA.236, 314-315). Purchasing Director Freeman reported those concerns to Associate Superintendent Bowman and, in response, Associate Superintendent Bowman directed Purchasing Director Freeman to request that Administrative Assistant Bryan reduce her concerns to writing. (ROA.240, 306, 316-317).

On August 9, 2021, Purchasing Director Freeman texted Administrative Assistant Bryan asking her "to provide a write up so we can decide how to proceed." (ROA.240). Administrative Assistant Bryan provided her "write up" on August 9, 2021, directly to Purchasing Director Freeman via email. (ROA.241-244). Therein, Administrative Bryan detailed numerous concerns relating to alleged sexual harassment at the hands of Hawthorne, as well as a variety of claims about Hawthorne's job performance, including perceived flaws in his supervisory abilities,

unprofessional demeanor with colleagues, and general incompetence. (ROA.241-244).

In response to Administrative Assistant Bryan's report, Human Resources Coordinator Chapa met with Administrative Assistant Bryan on Friday, August 13, 2021, to obtain additional information regarding her allegations. (ROA.245-252). Human Resources Coordinator Chapa provided his notes regarding the meeting to Executive Director of Human Resources Paige Curry on Monday, August 16, 2021. (ROA.245-252).

The next day, August 17, 2021, the School District placed Hawthorne on paid administrative leave to investigate Administrative Assistant Bryan's allegations. (ROA.253-266). Thereafter, the School District investigated the matter by interviewing or otherwise obtaining information from 12 individuals, including Purchasing Director Freeman and Hawthorne, as well as a follow-up interview with Administrative Assistant Bryan. (ROA.232-239, 267-291). The information reported to the School District included the following allegations against Plaintiff:

- "Morale is pretty low. Negative vibe. I dread getting up every day. Negative atmosphere I don't like." "Passive aggressive . . . manages through cameras." "I've heard him say Renee needs a translator, Shane has a 4th grade education . . . retarded." "Crew is too stupid to understand." "John Grant . . . dumb dick." Jeff . . . Thunderf**k . . . other terms." (ROA.273-274).

- "[Hawthorne] refers to his workers as 'retarded' and 'monkeys.'" "[Hawthorne] spoke of how cute his secretaries are and how handsome he is." "It's miserable . . it was happier and more productive when he

isn't there." "[Hawthorne] is vindictive." (ROA.275).

- "It felt hostile in one sense." "Snide remarks." "Harsh comments." "The bright spots are when he isn't there. The two weeks [Hawthorne] was out with COVID . . . it was great and not stressful." "He destroys morale." (ROA.276-277).

- "I felt like I've been bullied." "He's a bully." "He's very deceiving." (ROA.281-282)

- "He showed favor to Chad and Renee, two drivers. He frequently took each of them to lunch, but not the rest of us. He often had long conversations with them in his office and gave them less work (small loads, hotshot runs." (ROA.284).

Hawthorne denied the allegations against him. (ROA.270-272).

Hawthorne requested time off for August 20, 2021, and August 23, 2021. (ROA.292). As such, Executive Director of Human Resources Curry requested to meet with Hawthorne on August 24, 2021. (ROA.293). The same day, August 24, 2021, Hawthorne's attorney, Debra Edmondson, sent correspondence to the School District regarding Hawthorne's paid administrative leave and "the false accusations of sexual harassment and hostile work environment made against him by unknown person or persons." (ROA.294-295). The School District interviewed Hawthorne on September 1, 2021, with Attorney Edmondson and Birdville ISD counsel present, to review the allegations against Hawthorne. (ROA.211).

The School District concluded its investigation on September 12, 2021, confirming that, while the alleged conduct did not rise to the level of sexual harassment as defined by Board Policy DIA (Local), Hawthorne did engage in

unacceptable behavior towards subordinate employees, including referring to subordinate employees with inappropriate and disrespectful names and generally creating a negative and unproductive work environment. (ROA.296-297, 312). When Hawthorne returned to work on September 13, 2021, the School District had reassigned him to Special Projects Liaison. (ROA.212).

On October 8, 2021, Associate Superintendent Bowman issued Hawthorne a written reprimand. (ROA.295-296). The written reprimand summarized the findings of the investigation. (ROA.267-291, 296-297). The written reprimand also confirmed Hawthorne's reassignment to the position of Special Project Liaison, noting his salary would remain at the MT-8 paygrade until June 30, 2022, at which time it would be adjusted to the position he held as of July 1, 2022. (ROA.296-297).

From the time Hawthorne assumed his new position until he submitted his resignation on January 3, 2022, nothing occurred that made Hawthorne submit his resignation. (ROA.217). Instead, Hawthorne resigned his position because he "didn't feel like [he would] have a position and [the School District was] dropping [his] pay." (ROA.217). No one harassed Hawthorne or said anything inappropriate him to while he maintained the Special Projects Liaison position. (ROA.219).

On April 1, 2022, after Hawthorne resigned from the School District, Birdville ISD received correspondence from Attorney Edmondson alleging, for the first time, that Purchasing Director Freeman subjected Hawthorne "to ongoing harassment."

(ROA.216-217, 298-300). Indeed, Hawthorne never reported Purchasing Director Freeman and her alleged comments and hostile environment to anyone with Birdville ISD during his employment despite understanding that he could have made a report to the School District's Human Resources Department. (ROA.214, 216).

During his deposition, Hawthorne could not describe the allegedly hostile work environment beyond generalizations and matters not relating to Hawthorne's sex or gender (*e.g.*, being told Purchasing Director Freeman did not need a supervisor and matters relating to Purchasing Director Freeman's children). (ROA.214-215, 232-239). More specifically, Hawthorne testified as follows:

> Q.    So when she talked about having sex with her husband was it just, I had sex with my husband last night? I need details. You've alleged a hostile work environment, so I need details.

> A.    I mean, it's – I don't remember exactly the full details. It was about their sexual life. I don't know what you want me to tell you other than that. You try to shut that out or ignore it, so I don't know what – what else you want me to tell you.

> Q.    So as you sit here today all you can tell me generally is that she would talk about having sex with her husband generally or not wanting to have sex with her husband?

> A.    In those sexual conversations, yes, when she mentioned that. There was other things mentioned about her kids, and things were happening at her house with her kids that bothered me as well.

> Q.    Okay. We're just talking about the sex piece right now though.

> A.    Okay. Yeah, and that's -

Q.     So that's as much detail as you can provide me?

A.     Yes.

Q.     Anything else related to sex or gender that Ms. Freeman would tell you that made you uncomfortable?

A.     I'd say no.

The School District's legal counsel investigated and responded to the allegations in correspondence dated April 28, 2022. (ROA.301-303). Therein, the School District requested additional information to further investigate the allegations, but Hawthorne has no evidence reflecting he provided any additional information. (ROA.301-303). Instead, Hawthorne filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on or about April 14, 2022. (ROA.261-266).

## B.     Procedural Background

Hawthorne filed suit against Birdville ISD on March 23, 2023, asserting discrimination, hostile work environment, and retaliation claims under Title VII and the Texas Labor Code. (ROA.7-15). The School District moved to dismiss Hawthorne's sex based discrimination and retaliation claims under Federal Rule of Civil Procedure 12(b)(6). (ROA.31-47). The district court granted the School District's Motion to Dismiss and afforded Hawthorne an opportunity to replead his retaliation claims. (ROA.104-117). Hawthorne filed his Amended Complaint on December 3, 2023, which did not include claims under the Texas Labor Code.

(ROA.136-148).

Birdville ISD filed its Motion for Summary Judgment on December 20, 2023. (ROA.168-198). After the parties fully briefed the matter, the district court granted the School District's Motion for Summary Judgment and dismissed Hawthorne's Amended Complaint in its entirety. (ROA.318-347, 454-482). More specifically, the district court found Hawthorne failed to demonstrate a material issue of fact with respect to his retaliation and hostile environment claims. (ROA.481-482). The district court entered its Final Judgment on April 12, 2024. (ROA.483). Hawthorne filed his Notice of Appeal on May 3, 2024. (ROA.489-491).

## SUMMARY OF THE ARGUMENT

The first step in Hawthorne's retaliation claim is demonstrating for the Court that he engaged in a protected activity and, but for his protected activity, Birdville ISD would not have subjected him to an adverse employment action. The Court never reaches the latter "but for" causation question because Hawthorne never engaged in a protected activity in the first instance. Indeed, he never opposed an employment action that he reasonably believed violated Title VII. And under no circumstances could a reasonable juror believe that Hawthorne's pay inquiry on June 30, 2021, was anything other than a simple question about his salary for the upcoming 2021-2022 school year. This is particularly true given the ample evidence reflecting Hawthorne's concerns related to his pay in relation to his experience.

But even if the Court finds Hawthorne's email correspondence on June 30, 2021, constitutes a protected activity, the Record on Appeal does not support a *prima facie* case of causation. In the timeline of events, there is a clear intervening event (*i.e.*, Administrative Assistant Bryan's complaint of sexual harassment) that led to Hawthorne's administrative leave, reassignment, and reprimand. Regardless, Hawthorne does not dispute that Birdville ISD had legitimate, nonretaliatory reasons to decrease his pay, place him on administrative leave, reassign his position, or issue

12

him a reprimand.

Hawthorne, however, fares no better when the Court analyzes his pretext arguments. Indeed, his proffered comparator—Purchasing Director Freeman—also supervised Hawthorne, which removes her as a proper comparator as a matter of law. Even if the Court chooses to continue its analysis past this hurdle, Hawthorne cannot show Purchasing Director Freeman is a proper comparator using any of the grounds upon which this Court typically relies. Further complicating Hawthorne's pretext argument is his continual assertion that he was treated differently because of his sex, which does not constitute "but for" causation for purposes of his retaliation claim.

Hawthorne's hostile environment claim based on his sex also fails because the Record on Appeal simply does not reflect that Purchasing Director Freeman—or any other Birdville ISD employee—subjected him to severe or pervasive harassment that altered the conditions of his employment and created an abusive work environment. More importantly, Hawthorne cannot even show that Purchasing Director Freeman directed any inappropriate conduct towards him because of his sex or gender. When the Court considers the evidence in the Record on Appeal, despite Hawthorne's complete failure to provide proper citations, the result is clear—affirming the district court's order dismissing Hawthorne's claims in full.

## ARGUMENT AND AUTHORITIES

### A.     The Standard of Review

The district court granted Birdville ISD summary judgment under Federal Rule of Civil Procedure 56(f). (ROA.464-482). This Court reviews the district court's grant of summary judgment *de novo*.[1]

### B.     James Hawthorne failed to provide the Court with citations to the Record on Appeal in support of his arguments.

As a preliminary matter, Birdville ISD notes for the Court that the Arguments section of the Appellant Brief contains a single citation to the Record on Appeal, which is insufficient to preserve error.[2] (Appellant Brief, CMEF p.35). While Hawthorne directs the Court to the Record on Appeal in reciting the Statement of the Case, there is an inexplicable lack of citations in the body of the Appellant Brief, which hamstrings the Court and Birdville ISD from determining where the support for Hawthorne's contentions are in the Record on Appeal. As the Seventh Circuit memorably noted, "[j]udges are not like pigs, hunting for truffles buried in briefs."[3]

---

[1] *Cunningham v. Circle 8 Crane Servs., L.L.C.*, 64 F.4th 597, 599-600 (5th Cir. 2023).

[2] *See, e.g., Reddick v. Medtronic, Inc.*, No. 21-30169, 2022 WL 715494, at *1 (5th Cir. Mar. 9, 2022) (per curiam) (failing to cite to the Record on Appeal may amount to forfeiture of an argument). The sole citation contained therein directs the Court to the district court's Memorandum Opinion and Order. (Appellant Brief, CMEF p.35; ROA.477).

[3] *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

**C.    The district court correctly found James Hawthorne failed to establish a *prima facie* case of retaliation.**

To survive the School District's Motion for Summary Judgment with respect to his Title VII retaliation claim, Hawthorne had to show (1) he engaged in a protected activity, (2) he suffered a materially adverse action, and (3) a causal connection existed between the protected activity and the adverse action.[4] Here, Hawthorne failed to bring forth any evidence supporting a *prima facie* case and the district court correctly dismissed his retaliation claim. The Court should affirm the district court's dismissal accordingly.

**1.    James Hawthrone's inquiries regarding his salary cannot credibly be described as opposing a discriminatory employment practice.**

A "protected activity" occurs when an employee opposes an employment practice that he reasonably believes violates Title VII.[5] Here, Hawthorne never engaged in a protected activity because he never opposed a Birdville ISD employment practice in the first instance. More specifically, Hawthorne never expressed to anyone at the School District that he believed he was being paid less than female employees.[6] Instead, Hawthorne complained about his salary because he believed the School District underpaid him with respect to his years of experience

---

[4] *See Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017).
[5] *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224 (5th Cir. 2023).
[6] Beginning "to wonder" if the District was targeting him because he was "a white male" is patently different than actually expressing that belief to the School District. (ROA.449).

in comparison to other individuals at his same pay grade. (ROA.205-206). To that

end, Hawthorne testified as follows:

> Q.  And what about those interviews caused you to start asking questions about your pay?
>
> A.  I had asked in the past about the – where I was in the pay structure and then I just asked him to review it.
>
> *  *  *
>
> Q.  And what were your specific questions when you were asking about your pay?
>
> A.  I was asking about where I was in the box as far as experience in doing a position.
>
> *  *  *
>
> Q.  And what was the earliest you remember expressing those concerns to Rick Tice and Shelley Freeman?
>
> A.  As early as 2017.
>
> *  *  *
>
> Q.  And was your concern that you were not being paid the same as other individuals at your same level?
>
> A.  Yes.

(ROA.205-206).

Hawthorne's concerns regarding his pay in relation to his experience

culminated on June 30, 2021, when he sent an email to Human Resources

Coordinator Chapa stating "[p]lease review and let me know my 248 salary for

20[2]1-2022 school year."[7] (ROA.224). Hawthorne's simple request did not express

---

[7] Hawthorne does not provide the Court with any explanation or argument as to how this single sentence, even when coupled with his prior inquiries, constitutes opposition to a discriminatory employment practice.

any reasonably held discriminatory beliefs and certainly did not place anyone at Birdville ISD on notice that Hawthorne believed he (or anyone else) was being discriminated against because of sex or gender with regard to pay. This stands in stark contrast to this Court's decision in *Muslow*.[8]

There, the plaintiff sent an email to her employer outlining why she believed her employer was engaging in discrimination with respect to salaries.[9] The email in question was more than a one sentence request:

> The adjustments sought are not only equitable on their face given the 2017 study, but are also overdue and necessary to ameliorate an environment at the [LSU]HSC that has not seemed historically to view equity as potentially a gendered issue. By way of example: With my move to the OGC, there will be but one woman who directly reports to the chancellor and, like me, her salary has lagged far behind her male peers. Also like me, her salary was adjusted only to the bare salary minimum indicated in the 2017 equity study and she's not received an adjustment since.[10]

In response, general counsel for the plaintiff's employer acknowledged during his deposition that he understood the plaintiff's email raised gender-pay equity concerns.[11] Hawthorne's inquiries here fall well short of anything reflecting opposition.[12] It follows that the district court correctly held Hawthorne did not

---

[8] *See, e.g., Muslow v. La. State Univ. & Agric.& Mech. Coll. Bd. of Supervisors*, No. 22-30585, 2023 WL 5498952, at *8 (5th Cir. Aug. 24, 2023) (per curiam).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Hawthorne notes in his Appellant Brief that the Equal Employment Opportunity Commission recognizes "asking manager or co-workers about salary information uncover potentially discriminatory wages" as a protected activity. (Appellant Brief, CMEF p.25). But that is not what

engage in a protected activity and, therefore, did not establish a *prima facie* case of retaliation. (ROA.472-473).

**2. James Hawthrone failed to adduce evidence reflecting he reasonably believed his pay was discriminatory.**

During his deposition, Hawthorne admitted that his concerns around his pay related to his paygrade, eventually testifying that he believed he "should've been paid for eight years' experience in [the] position [he] held since [he] was in it for eight to nine years."[13] (ROA.205-206, 210). And when questioned about the individuals who were paid differently from him, the only individuals he identified were male. (ROA.209). He could not identify any females who received higher wages and did not point to any other protected class or discriminatory reason as to why he was asking questions about his pay. (ROA.209-210). The district court agreed. (ROA.471-473).

Hawthorne now argues that the district court "ignored" part of Hawthorne's deposition testimony to justify its decision that Hawthorne "did not reasonably believe that he received less pay because of his sex." (Appellant Brief, CMEF p.29). But Hawthorne's testimony on this point is clear and unequivocal:

> Q.    Can you tell me any women that were paid at a higher rate than you?

---

occurred here. Indeed, Hawthorne admittedly inquired about his pay grade in relation to his experience and was not polling managers and co-workers regarding their pay grades. (ROA.205-206, 224).

[13] As of the 2021-2022 school year, Hawthorne actually had a credit of 11 years of experience. (ROA.231, 310-311).

A.    There's multiple women that were paid at higher rates than me. I couldn't name them all.

Q.    Okay. Any women that were at your same – at your same level as a supervisor that were paid more than you?

A.    I wouldn't know that for certain.

Q.    Okay. Because earlier you told me Jeff Cotton, Mark Gilliland, and Kyle Mazac, correct?

A.    Well, there's other leads and supervisors that are in that same pay grade. I mean, it's a broad scope.

Q.    Okay. But Kyle, Mark, and Jeff are all men, correct?

A.    Yes.

Q.    And so what I'm asking is can you provide me with the names of any women who were at the same level of seniority as you, the same years of experience as you that were being paid more?

A.    No. Not at this time.

(ROA.209). In other words, Hawthorne has never held a reasonable belief related to discriminatory wages; instead, his testimony reflects concerns regarding his pay in relation to his experience. (ROA.205-206).

In an apparent attempt to support his allegedly "reasonable belief," Hawthorne asserts he "was passed over repeatedly for job opportunities." (Appellant Brief, CMEF p.28). More specifically, Hawthorne states Associate Superintendent Bowman and Purchasing Director Freeman "would not approve" Hawthorne coaching basketball. (Appellant Brief, CMEF p.14). What Hawthorne fails to tell the

Court is that the denial stemmed from Hawthorne's inability to coach basketball and perform his job duties as doing so would interfere with Hawthorne's daily work schedule. (ROA.368). Regardless, Hawthorne did not produce any evidence reflecting who ultimately received the coaching position, thereby undercutting any support for his contention that he held a reasonable belief the School District discriminated against him because of his sex or gender.

The same holds true with regard to Hawthorne's unsuccessful bid for the School District's Director of Transportation position. (Appellant Brief, CMEF p.14). Indeed, Hawthorne's argument does nothing more than highlight for the Court how unreasonable his alleged beliefs are with respect any claim of discrimination at the hands of Birdville ISD. While Hawthorne boasts nine letters of recommendation when he applied for the position, he fails to recognize that the female hired by Birdville ISD had 20 years' experience as the School District's Assistant Director of Transportation. (ROA.369). As Associate Superintendent Bowman explained,

> Ms. Nguyen has been the second in command of our transportation department for over 20 years. She was – with our previous director, she was doing all the routes. She was doing all the work. And she had intricate knowledge and experience with running a transportation department. She was the most qualified. I believe we did have a transportation person from another district we interviewed. But in the end, Ms. Nguyen was the most qualified candidate, based on the committee's decision.[14]

---

[14] Birdville ISD also directs the Court to Associate Superintendent Bowman's testimony reflecting the hiring committee for the Director of Transportation position. (ROA.368-369). In other words,

(ROA.369). More to the point, Hawthorne's belief that Birdville ISD hired Ms. Nguyen over him because of his sex or gender is not reasonable; rather, it is absurd.

Finally, Hawthorne relies on case law from the Texas Supreme Court to argue that he "is not required to marshal evidence and prove his claim to satisfy the jurisdictional hurdle of establishing a *prima facie* case."[15] Not only is this case not binding authority, it is completely inapposite. To that end, in *Garcia*, the Texas Supreme Court analyzed a plea to the jurisdiction with respect to claims under the Texas Labor Code.[16] And at that stage of the proceedings, the *prima facie* case "implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity"—a doctrine that does not come into play under Title VII.[17]

In contrast, Birdville ISD filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. (ROA.168-198). At this stage of the proceedings, Hawthorne is expected to marshal his evidence in response to the dispositive motion in an effort to create a fact question.[18] Indeed, the Federal Rules

---

Associate Superintendent Bowman did not make the decision—the hiring committee did. (ROA.368-369).

[15] *See Mission Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634, 637 (Tex. 2012).

[16] *Id.* at 633-35.

[17] *Id.* at 635-36.

[18] *See, e.g., Westfall v. Luna*, No. 4:15-cv-00874-O, 2019 WL 3892438, at *6 (N.D. Tex. Aug. 19, 2019) ("Consequently, with respect to her false-arrest claim, to defeat Defendants' motion for summary judgment predicated on *Heck*, Plaintiff must marshal evidence sufficient to convince a reasonable jury that the proceeding terminated in her favor.").

of Civil Procedure specifically contemplate a situation where a party is not able to

marshal evidence in response by, *inter alia*, providing an opportunity for additional

discovery.[19] Instead of "creating additional hurdles," the district court simply held

Hawthorne to the requirements of Rule 56. (Appellant Brief, CMEF p.30;

ROA.473). This Court should follow suit.

### 3. The timeline of events reflects no causal connection between any employment action and Hawthorne's alleged protected activity.

"To demonstrate the third element of a prima facie case of retaliation—a

causal connection between the protected activity and the adverse action—a plaintiff

must demonstrate that the employer's decision 'was based in part on knowledge of

the employee's protected activity.'"[20] While temporal proximity may provide the

necessary causal connection, the timeline of events here firmly undercuts any

connection even assuming *arguendo* that Hawthorne engaged in a protected activity

when he emailed Human Resources Coordinator Chapa on June 30, 2021.[21]

---

[19] FED. R. CIV. P. 56(d). *See, e.g., Full House Resorts, Inc. v. Boggs & Poole Contracting Group., Inc.*, No. 1:14cv223–KS–MTP, 2015 WL 1427284, at *15 (S.D. Miss. Mar. 27, 2015) ("Motion for Summary Judgment will be denied without prejudice so that discovery can proceed and Plaintiffs can marshal evidence in support of their claims and in opposition to Defendants' bases for dismissal."); *Mandawala v. Baptist Sch. of Health Prof'ls*, No. 23-50258, 2024 WL 1461943, at *4 (5th Cir. Apr. 4, 2024) ("[O]ur court has foreclosed a party's contention on appeal that it had inadequate time to marshal evidence to defend against summary judgment when the party did not seek Rule 56([d]) relief before the summary judgment ruling.").
[20] *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020).
[21] While the district court did not address Hawthorne's failure to establish a causal connection as part of his *prima facie* case of retaliation, the Court may affirm the district court's dismissal "on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *Lauren C. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018).

Hawthorne sent his one sentence email to Human Resources Coordinator Chapa on June 30, 2021, who responded on July 12, 2021, providing Hawthorne with his (albeit incorrect) salary for the 2021-2022 school year. (ROA.223-224, 228, 305). Birdville ISD then paid Hawthorne on July 23, 2021, and his paycheck reflected his correct hourly rate (not the rate incorrectly provided). (ROA.231, 304-306). There is no evidence in the Record on Appeal that Hawthorne followed-up until August 6, 2021, at 9:45 p.m., when he emailed Associate Superintendent Bowman the information he received from Human Resources Coordinator Chapa. (ROA.228). Associate Superintendent Bowman was not aware of Hawthorne's prior communication with Human Resources Coordinator Chapa until she received Hawthorne's email. (ROA.228, 304). The email makes no claims that would place a reasonable person on notice that Hawthorne was opposing (or attempting to oppose) any discriminatory practices. (ROA.228).

In the meantime, on August 5, 2021, Administrative Assistant Bryan reported concerns regarding Hawthorne to Purchasing Director Freeman. (ROA.236, 314-315). This report led to placing Hawthorne on administrative leave with pay to investigate and ultimately reassigning him based on information uncovered during the investigation. (ROA.212, 232-239, 241-291, 296-297, 312). While the School District recognizes all of these events occurred between June 30, 2021 (when Hawthorne sent Human Resources Coordinator Chapa an email) and September 13,

2021 (when the School District reassigned Hawthorne), there is a clear demarcation of events that effectively cuts off causation. (ROA.205, 212, 224).

More to the point, Hawthorne identified four employment actions to support his *prima facie* case of retaliation—the alleged decrease in his pay for the 2021-2022 school year, being placed on paid administrative leave, being reassigned to a new position, and receiving a written reprimand. (ROA.209-210, 216, 473-475). The School District paid Hawthorne the correct amount on July 23, 2021, well before Associate Superintendent Bowman knew of Hawthorne's questions about his pay, effectively nullifying any causal connection between Hawthorne's pay and his email to Human Resources Coordinator Chapa. (ROA.228, 304).

Likewise, Administrative Assistant Bryan reported her concerns regarding Hawthorne before Associate Superintendent Bowman knew of Hawthorne's questions about his pay. (ROA.228, 236, 304, 314-315). And those concerns—that predate Associate Superintendent Bowman's knowledge of any alleged protected activity—are what led to the School District placing Hawthorne on paid administrative leave, reassigning him to a new position, and issuing him a written reprimand. (ROA.212, 232-239, 241-291, 296-297, 312). And Hawthorne has no evidence reflecting that anyone asked or directed Administrative Assistant Bryan to make her concerns known. (ROA.211, 307, 312, 315, 317). While the district court did not address causation given Hawthorne's failure to engage in protected activity,

Hawthorne still bears the burden of proof to establish his *prima facie* case.

### D.    The district court correctly held James Hawthorne failed to establish pretext on the part of Birdville Independent School District.

Hawthorne does not challenge the district court's determination that Birdville ISD had legitimate, nonretaliatory reasons for taking employment action against him. (Appellant Brief, CMEF p.11). As such, the burden shifts to Hawthorne to prove pretext.[22] "Ultimately, [he] must show that 'but for' the protected activity, the adverse employment action would not have occurred."[23] The district court correctly found Hawthorne failed to meet this burden. (ROA.475-477). The Court should affirm the district court's dismissal of Hawthorne's retaliation claim accordingly.

### 1.    James Hawthorne's pretext argument effectively forecloses his ability to prove the requisite "but for" causation.

Hawthorne's retaliation claim stems from his belief that he engaged in a protected activity when he inquired about his salary on June 30, 2021. (ROA.143, 338-339; Appellant Brief, CMEF 26-30). As such, Hawthorne's burden at the pretext stage is to establish that "but for" the questions about his salary, Birdville ISD would not have placed him on paid administrative leave, reassigned him to a new position, and issued him a written reprimand.[24] (ROA.209-210, 216, 473-475). Instead of

---

[22] *Lyons*, 964 F.3d at 304.

[23] *Id.*

[24] Hawthorne does not appear to take issue with his "decrease" in pay on appeal nor can he as the undisputed evidence shows how the School District arrived at MT-8 paygrade raises for the 2021-2022 school year and that all employees in the MT-8 paygrade received the same raise. (ROA.230,

explaining to the Court how his pay inquiries are the "but for" cause for the alleged adverse employment actions, Hawthorne asserts Associate Superintendent Bowman treated him differently than Purchasing Director Freeman when it came to complaints made by subordinate employees.[25] (Appellant Brief, CMEF pp.32-34).

In concluding his arguments, Hawthorne states "[t]he difference in [Associate Superintendent] Bowman's handling of these investigations is stark, and the clearest reason for this difference is that Mr. Hawthorne is a male and [Purchasing Director] Freeman is a female." (Appellant Brief, CMEF p.34). The district court found this exact argument unpersuasive because whether Hawthorne and Purchasing Director Freeman were treated differently because of their sex or gender does not (and cannot) answer the actual question before the Court—whether Hawthorne's protected activity was the "but for" cause for his subsequent administrative leave, reassignment, and reprimand.[26] (ROA.475-476).

### 2. The Purchasing Director is not a proper comparator to James Hawthorne as a matter of law.

While Hawthorne asserts Purchasing Director Freeman "is a 'nearly identical'

---

306). As such, Birdville ISD focuses its arguments on Hawthrone's administrative leave, reassignment, and reprimand.

[25] Hawthorne also asserts that his and Purchasing Director Freeman's "sex" was "the biggest differentiating factor" with respect to the alleged differential treatment. (Appellant Brief, CMEF p.35). Again, this does not speak to retaliation stemming from the alleged protected activity.

[26] Birdville ISD disputes Hawthorne's contentions regarding sex and gender discrimination. Regardless, such claims are not before the Court as Hawthorne's Amended Complaint asserts claims for retaliation and a hostile work environment under Title VII. (ROA.142-147).

comparator" for purposes of pretext, he fails to recognize that Purchasing Director Freeman supervised him, which removes her as a proper comparator as a matter of law.[27] (Appellant Brief, CMEF p.32). Hawthorne counters by attempting to distinguish this Court's decision in *Amezquita* because "the employee was an accounting executive with no management responsibilities, and the proffered comparator was the only management personnel in the office." (Appellant Brief, CMEF p.35).

Hawthorne, however, fails to articulate for the Court how this "distinctly different circumstance" changes the Court's analysis or the application of the specific legal tenet. Indeed, in *Crosby*, the plaintiff, like Hawthorne, supervised other individuals and this Court still found the plaintiff and his supervisor were not proper comparators because they "did not have the same supervisor."[28] The Court should affirm the district court's finding accordingly.

### 3.     The Purchasing Director is not a proper comparator for purposes of the Court's pretext analysis.

Typically, "[a] plaintiff who proffers the treatment of a fellow employee must

---

[27] It is undisputed Purchasing Director Freeman supervised Plaintiff. (ROA.360). *See Amezquita v. Beneficial Tex., Inc.*, 264 Fed. App'x 379, 385-86 (5th Cir. 2008) (noting a distinction in position and supervisory authority "has been held sufficient to establish that two persons are not similarly situated"); *Greer v. Armstrong World Indus., Inc.*, No. 5:09–cv–20, 2010 WL 2926043, at *6 (S.D. Miss. Jul. 21, 2010) ("Robertson was one of the plaintiff's subordinates, which negates any suggestion that she and the plaintiff were proper comparators."); *Crosby v. Computer Sci. Corp.*, 470 Fed. App'x 307, 309 (5th Cir. 2012) (per curiam).

[28] *Crosby*, 470 Fed. App'x 308-09.

show that the plaintiff's termination was taken 'under nearly identical circumstances' as those faced by the comparator."[29] And "[e]mployees are similarly situated when they 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'"[30]

To make this showing, Hawthorne offers Purchasing Director Freeman as a comparator because (1) Associate Superintendent Bowman was the ultimate decisionmaker with respect to separate investigations regarding Hawthorne and Purchasing Director Freeman, (2) Hawthorne and Purchasing Director Freeman held supervisory positions at Birdville ISD, and (3) Hawthorne and Purchasing Director Freeman both reported to Associate Superintendent Bowman. (Appellant Brief, CMEF p.32). Hawthorne's arguments, however, fall well short of establishing a Purchasing Director Freeman as a proper comparator.

### a.    The Associate Superintendent was not the ultimate decisionmaker for James Hawthorne.

Hawthorne asserts that "[b]ecause [Associate Superintendent] Bowman was the ultimate decision-maker in both investigations, [Purchasing Director] Freeman is a nearly identical comparator." (Appellant Brief, CMEF p.22). The overarching problem with Hawthorne's contention is that he does not have any evidence to

---

[29] *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019).
[30] *Id.* (quoting *See Lee v. Ks. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

support it. Indeed, Hawthorne directs the Court to a single citation in the Administrative Record to support his statement, but the single record citation actually offers no support. (Appellant Brief, CMEF p.14; ROA.368). Instead, the citation to the Record on Appeal discusses Associate Superintendent Bowman's involvement in hiring the Director of Transportation in 2018, which is wholly irrelevant to Hawthrone's statement. (ROA.368).

The evidence in the Record on Appeal actually reflects that Associate Superintendent Bowman was not the "ultimate decisionmaker" regarding Hawthorne's administrative leave, his reassignment, and subsequent reprimand. Rather, Executive Director of Human Resources Curry directed Human Resources Coordinator Chapa to investigate Administrative Assistant Bryan's concerns further, directed Associate Superintendent Bowman to have Administrative Assistant Bryan reduce her concerns to writing, made the decision to place Hawthorne on administrative leave, as well as the decision to reassign and reprimand him. (ROA.311-312). Associate Superintendent Bowman did not participate in the investigation regarding Hawthorne's conduct and took her direction from the Human Resources Department. (ROA.306-307, 311-312).

In other words, Hawthorne's allegations that Associate Superintendent Bowman handled the investigation regarding his conduct and subsequently made decisions regarding his conduct is not borne out by the Record on Appeal. It follows

that there is no evidence of a stark difference between how Associate Superintendent Bowman handled allegations against Purchasing Director Freeman and Hawthorne because Associate Superintendent Bowman was nothing more than the messenger for the Human Resources Department with respect to Hawthorne's employment.[31] (ROA.306-307, 311-312).

>
> **b. James Hawthorne failed to establish any similarity between his supervisory position and the supervisory position held by the Purchasing Director.**

Hawthorne takes issue with the district court's determination "that the fact Mr. Hawthorne and [Purchasing Director] Freeman both held supervisory positions at [the School District] was not enough to prove they had similar job responsibilities." (Appellant Brief, CMEF p.34; ROA.477). To address this finding, Hawthorne argues he and Purchasing Director Freeman "do not need to be exactly identical comparators, simply nearly identical comparators." (Appellant Brief, CMEF p.35). While Hawthorne generally summarizes the relevant law correctly, this does nothing to address his lack of evidence for purposes of pretext.[32]

To that end, even though Hawthorne asserts he and Purchasing Director

---

[31] Another example of Hawthorne's unsupported statements includes his contention that Associate Superintendent Bowan "interviewed nine (9) other employees around the warehouse." (Appellant Brief, CMEF p.23). Hawthorne provided the Court with no citation to the Record on Appeal to support this statement presumably because the Record on Appeal shows the Human Resources Department interviewed the employees. (ROA.106, 110-111).

[32] *See Lee*, 574 F.3d at 260 ("We do not, however, interpret 'nearly identical' as synonymous with identical.").

Freeman "were both tasked with supervising a team of staff" and even though Hawthorne argues they had similar responsibilities, he does not direct the Court to any evidence on the Record on Appeal supporting these statements. (Appellant Brief, CMEF p.35). In other words, Hawthorne's argument to this Court suffers from the same fatal defects raised by the district court.[33]

### c. James Hawthorne reported to the Purchasing Director—not the Associate Superintendent.

Hawthorne asserts the district court erred in finding Purchasing Director Freeman was not a proper comparator even though they "both reported to the same person" (*i.e.*, Associate Superintendent Bowman). (Appellant Brief, CMEF p.22). Once again, Hawthorne's statement is unsupported. The Record on Appeal reflects Hawthorne reported to Purchasing Director Freeman and Purchasing Director Freeman reported to Associate Superintendent Bowman. (ROA.214, 304, 316). Even Hawthorne's Declaration reflects Purchasing Director Freeman was his "immediate supervisor and she reported to [Associate Superintendent] Bowman with whom I also interacted periodically." (ROA.447).

### d. James Hawthorne and the Purchasing Director were not accused of engaging in similar conduct.

To meet his pretext burden, Hawthorne asserts the investigation against

---

[33] If two individuals both holding supervisory power constituted proper comparators, an employee could argue any supervisor sufficed for purposes of the similarly situated analysis. This Court's decision in *Lee* does not support such a broad view. *See id.* at 259-60.

Purchasing Director Freeman and the investigation against him are "similar in nature" because "[b]oth investigations were filed by a direct report and stemmed from allegations of inappropriate conversations in the office." (Appellant Brief, CMEF p.32). To the contrary, Administrative Assistant Bryan raised concerns regarding sexual harassment at the hands of Hawthorne, whereas Marina Williams (the other complainant) asserted claims against Purchasing Director Freeman ranging from needing additional support to Purchasing Director Freeman speaking poorly about Hawthorne and others. (ROA.242-252, 441, 444-445).

Importantly, unlike the allegations against Hawthorne, Ms. Williams's letter did not reflect Purchasing Director Freeman sexually harassed any employees or used the highly inappropriate term "retard" (or any variation thereof).[34] (ROA.242-252, 441, 444-445). When Ms. Williams's allegations came to light, Associate Superintendent for Human Resources Skip Baskerville asked Associate Superintendent Bowman to investigate the matter. (ROA.376). When Associate Superintendent Bowman was not able to corroborate Ms. Williams's allegations, she addressed the matter with Purchasing Director Freeman. (ROA.377).

In contrast, when Human Resources Coordinator Chapa interviewed

---

[34] Notably, while Ms. Williams now parrots Hawthorne's allegations regarding Purchasing Director Freeman in her affidavit, none of those allegations are found anywhere in her statement to the District in July 2021. (ROA.444-445, 452-453). And when the Court is analyzing whether the complaints made by Ms. Williams and Administrative Assistant Bryan, it is imperative that the Court review the information Birdville ISD had at the time—not what Ms. Williams has now embellished after the fact.

Administrative Assistant Bryan, she reported comments from Hawthorne about, *inter alia*, his good looks, about hiring her because she was young and cute, how "women's panties just drop when [Hawthorne came] in," women approaching Hawthorne, how Hawthorne called his employees "retarded," and not wearing her "daisy dukes" to work so other "guys" would not look at her. (ROA.246-252). In response to these allegations, Executive Director of Human Resources Curry placed Hawthorne on administrative leave while the Human Resources Department investigated further, thereby ensuring the integrity of the investigation and separating Hawthorne and Administrative Assistant Bryan given her allegations that that certainly leaned towards being sexual in nature. (ROA.311).

While Birdville ISD ultimately concluded Hawthorne did not engage in sexual harassment of Administrative Assistant Bryan, the investigation did reveal that Hawthorne did not need to be supervising individuals given the information that Administrative Assistant Bryan reported that was corroborated and/or otherwise reported by multiple warehouse employees. (ROA.273-277, 281-282, 284, 311). The District reassigned Hawthorne to a new position and issued Hawthorne a reprimand for his conduct accordingly. (ROA.296-297). Moreover, while Birdville ISD still employed Administrative Assistant Bryan at the time she made her complaint against Hawthorne, Ms. Williams made her complaint as she resigned her employment. (ROA.314, 442).

In short, Purchasing Director Freeman and Hawthorne fail every test for being proper comparators. Purchasing Director Freeman was Hawthorne's supervisor, which inherently reflects they had different supervisors, different work responsibilities, and different individuals handling the investigation into allegations and subsequent employment decisions stemming from those investigations. Nor was Hawthorne's conduct "nearly identical" to the allegations levied against Purchasing Director Freeman given the lack of evidence that Purchasing Director Freeman engaged in sexual harassment, used racial epithets, or called her employees "retarded" (or any variation thereof).[35] It follows that even assuming *arguendo* that Hawthorne engaged in a protected activity, he failed to create a fact question on pretext. The Court should affirm the district court's dismissal of Hawthorne's retaliation claim accordingly.

**E.     The district court correctly determined James Hawthorne failed to support his claim for a hostile work environment.**

To defeat the District's Motion for Summary Judgment, Hawthorne had to bring forth evidence establishing (1) he belongs to a protected class; (2) he was subjected to harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of employment.[36] In expanding on this the

---

[35] *See Lee*, 574 F.3d at 259-60.  While the District recognizes the allegations made by Plaintiff and Ms. Williams regarding discussions of her sex life, as already noted, none of those allegations came to light until after Plaintiff resigned his employment. (ROA.214, 444-445).
[36] *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022).

standard, this Court has explained,

> [t]o affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[37]

The district court correctly found Hawthorne could not meet this standard.

(ROA.477-480). The Court should affirm the district court's dismissal accordingly.

### 1.     Hawthorne's allegations against the Purchasing Director do not support a hostile work environment claim.

Hawthorne testified that Purchasing Director Freeman began subjecting him to a hostile work environment around 2017. (ROA.214). He described this allegedly hostile environment as follows:

> Q.     So talk to me about what this hostile work environment looked like starting in 2015, 2016.
>
> A.     Being told that she didn't need a supervisor and I was replaceable or that I wasn't being paid too much when I asked my salary or – talked about multiple things that made me uncomfortable.
>
> Q.     Okay. What else did she talk about that made you uncomfortable?
>
> A.     Anything to do with her personal life or anything like that.

---

[37] *Id.*

Q.    What did she tell you about her personal life?

A.    She talked about her relations with her – with her husband.

Q.    When you say "she talked about it," can you give me examples?

A.    She mentioned different things with their life or their sex life that I didn't think I should have to hear about.

Q.    I need examples. What did she tell you about her sex life that you didn't think you had to hear?

A.    Her and her husband having sex or he wanted to have it and she had to talk him out of it. Just conversations that shouldn't happen.

Q.    Did she go into graphic detail about having sex with her husband?

A.    I usually shut it down or tried to change the subject or get out of the office.

Q.    That wasn't my question. Did she talk to you and give you graphic details about having sex with her husband?

A.    She talked about having sex with her husband, but not in graphic detail.

Q.    So when she talked about having sex with her husband was it just, I had sex with my husband last night? I need details. You've alleged a hostile work environment, so I need details.

A.     I mean, it's – I don't remember exactly the full details. It was about their sexual life. I don't know what you want me to tell you other than that. You try to shut that out or ignore it, so I don't know what – what else you want me to tell you.

Q.    So as you sit here today all you can tell me generally is that she would talk about having sex with her husband generally or not

wanting to have sex with her husband?

A.    In those sexual conversations, yes, when she mentioned that. There was other things mentioned about her kids, and things were happening at her house with her kids that bothered me as well.

Q.    Okay. We're just talking about the sex piece right now though.

A.    Okay. Yeah, and that's –

Q.    So that's as much detail as you can provide me?

A.    Yes.

Q.    Anything else related to sex or gender that Ms. Freeman would tell you that made you uncomfortable?

A.    I'd say no.

(ROA.214-215). And while Hawthorne testified that these conversations with Purchasing Director Freeman occurred anytime she was in the warehouse, the vague and general allegations that she discussed "having sex with her husband, but not in graphic details" fall well short of the standard for actionable harassment. (ROA.215).

In response, Hawthorne again argues "it is the totality of [Purchasing Director] Freeman's actions, in conjunction with [Associate Superintendent] Bowman, that created a hostile work environment for Mr. Hawthorne." (Appellant Brief, CMEF pp.37-38; ROA.478). And again, Hawthorne cannot and did not direct the Court to any conduct by Associate Superintendent Bowman that constitutes sexual harassment. As the district court aptly noted,

> Hawthorne's evidence has not shown a fact issue for trial on whether [Purchasing Director] Freeman's alleged talk about her sex life created a hostile work environment. Hawthorne does not argue that these remarks were physically threatening or humiliating, and he has not described the degree to which these remarks unreasonably interfered with his work performance, aside from making him "dread[]" coming to work. Accordingly, no reasonable jury could find that [Purchasing Director] Freeman's conduct was so severe or pervasive that it affected Hawthorne's ability to work.

(ROA.478-479).

Nevertheless, Hawthorne argues "[t]he conduct was so severe that it ultimately caused [Hawthorne] to be demoted and altered the terms and conditions of his employment such that [Hawthorne] felt he had no option but to resign in January 2022." (Appellant Brief, CMEF p.38). This statement is not borne out by the Record on Appeal. Hawthorne admitted he never reported Purchasing Director Freeman's actions to anyone at the District. (ROA.214). Moreover, Purchasing Director Freeman did not make any of the decisions relating to Hawthorne being placed on administrative leave, being reassigned, or being reprimanded. ROA.311-312, 116-117). In other words, there is a wholesale failure by Hawthorne to connect these dots for the Court.

### 2. Plaintiff cannot demonstrate that the Purchasing Director's alleged actions are based on his sex.

According to Hawthorne and Ms. Williams, Purchasing Director Freeman was an equal opportunity over-sharer. In reporting the allegedly hostile work environment to the EEOC, Hawthorne specifically stated Purchasing Director

Freeman "regularly loved to 'dish' about her personal problems with anyone who would listen including [Hawthorne]" and "regularly discussed her sex life with [Hawthorne] and any other staff who were around." (ROA.265). Ms. Williams also reported (albeit for the first time) that Purchasing Director Freeman "spoke of her sex life with her husband and the issues they had in the bedroom." (ROA.452). "Dishing" to "anyone who would listen" and discussing her sex life with anyone "who [was] around" is a far cry from directing any comments or discussion towards Hawthorne because of his sex.[38]

More to the point, Hawthorne does not explain for the Court how Purchasing Director Freeman's actions are based on anyone's sex when she (allegedly) would share this information with anyone. (ROA.265, 452). Instead of addressing this lingering question, Hawthorne argues the district court failed to look at Associate Superintendent Bowman's conduct in conjunction with Purchasing Director Freeman's alleged behavior. (Appellant Brief, CMEF p.40). But again, Hawthorne cannot direct the Court to any evidence reflecting Associate Superintendent Bowman engaged in any conduct that created a hostile work environment based on his sex. Hawthorne's statements to the contrary are not supported by the Record on Appeal.[39] (Appellant Brief, CMEF p.40).

---

[38] While not relevant to the Court's analysis, Purchasing Director Freeman adamantly denies Hawthorne's allegations. (ROA.239).

[39] As already stated, Associate Superintendent Bowman did not participate in the investigation of

### 3. James Hawthorne cannot demonstrate that the Purchasing Director's alleged actions altered the conditions of his employment.

Hawthorne cannot direct the Court to any evidence in the Record on Appeal establishing the alleged harassment was so severe or pervasive that it altered the conditions of his employment with the District.[40] When questioned about the allegations Administrative Assistant Bryan made against him, which included allegations that he was not doing his job, Hawthorne never once reported Purchasing Director Freeman or made any reference to the alleged harassment; instead, he stated he believed his warehouse group was "small but mighty but get things done." (ROA.213, 267-269, 272). Indeed, Hawthorne reported to the EEOC that he "always received exemplary reviews, most recently in June of 2021." (ROA.261-266).

## F. Conclusion

Based on the foregoing, the Court should affirm the district court's dismissal of Hawthorne's retaliation claim and hostile work environment claim in full.

Respectfully submitted,

By:   /s/Meredith Prykryl Walker
        Meredith Prykryl Walker
        State Bar No. 24056487

---

Administrative Assistant Bryan's complaints. (ROA.306-307, 311-312).
[40] *Saketkoo*, 31 F.4th at 1003.

Meredith Prykryl Walker
WALSH GALLEGOS KYLE
ROBINSON & ROALSON P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com

*Attorneys for Defendant-Appellee*
*Birdville Independent School District*

---

## CERTIFICATE OF SERVICE

---

The undersigned certifies that on this 23rd day of August, 2024, the foregoing Brief of Appellee Birdville Independent School District has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit and a true and correct copy of the same was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ Meredith Prykryl Walker
Meredith Prykryl Walker

## CERTIFICATE OF PRIVACY REDACTIONS AND VIRUS SCANNING

The undersigned certifies that: (1) all required privacy redactions have been made in this brief, in compliance with 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, in compliance with 5TH CIR. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Meredith Prykryl Walker
Meredith Prykryl Walker

Dated:     August 23, 2024

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 9,027 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016, Times New Roman, font size 14 for text and font size 12 for footnotes.

/s/ Meredith Prykryl Walker
Meredith Prykryl Walker

Dated:     August 23, 2024