# No. 24-10398

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

JAMES HAWTHORNE,

Plaintiff - Appellant

v.

BIRDVILLE INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee

## On Appeal from
United States District Court for the Northern District of Texas

4:23-CV-00301-BP

## REPLY BRIEF OF APPELLANT JAMES HAWTHORNE

SUBMITTED BY:

Debra Edmondson
State Bar No. 24045824
debra@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
P.O. Box 92801
325 Miron Dr., Ste. 100
Southlake, Texas 76092
Telephone: (817) 416-5921

Joseph Glover
State Bar No. 24131334
josephg@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
P.O. Box 92801
325 Miron Dr., Ste. 100
Southlake, TX 76092
Telephone: (817) 416-5921

# TABLE OF CONTENTS

Contents                                                                    Page(s)

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

ARGUMENT ........................................................................................ 1

   I.    Genuine Disputes of Material Fact Exist with
       Respect to Mr. Hawthorne's Retaliation Claim ........................................ 1

       A. James Hawthorne Has Established a *Prima Facie*
          Claim for Retaliation Against Birdville ISD
          as a Matter of Law .............................................................................. 1

       B. The District Court Erred When It Held That
          Hawthorne Did Not Establish a *Prima Facie*
          Claim for Retaliation .......................................................................... 5

   II.   A Genuine Dispute of Material Fact Exists with
       Respect to Whether Shelley Freeman is a
       "Nearly Identical Comparator" .............................................................. 7

       A. Mr. Hawthorne Properly Established
          Freeman as a "Nearly Identical
          Comparator" ........................................................................................ 7

       B. The District Court Erred When It Held
          Freeman is Not a "Nearly Identical
          Comparator" ...................................................................................... 11

   III.  Genuine Disputes of Material Fact Exist
       with Respect to Mr. Hawthorne's Discrimination

Claim ................................................................................... 14

A. Mr. Hawthorne Established a Genuine Dispute
Of Material Fact Regarding a Hostile Work
Environment ....................................................................... 14

B. The District Court Erred When It Held
Hawthorne Failed to Show Harassment
that Altered the Conditions of His Employment .............................. 17

CONCLUSION ............................................................................. 19

CERTIFICATE OF SERVICE ............................................................. 21

CERTIFICATE OF COMPLIANCE .................................................... 22

# TABLE OF AUTHORITIES

**Cases**..................................................................**Pages(s)**
CASES

*Ackel v. National Communications, Inc.*
339 F.3d 376 (5th Cir. 2003)............................................... 2-3

*Amezquita v. Ben. Tex., Inc.*
264 F. App'x 379 (5th Cir. 2008) ..................................... 12-13

*Aryain v. Wal-Mart Stores Tex. LP*
534 F.3d 473 (5th Cir. 2008)................................................15

*Broderick v. Donaldson*
437 F.3d 1226 (D.C. Cir. 2006) ............................................3

*Burlington Indus. v. Ellerth*
524 U.S. 742 (1998)........................................................4, 15

*Cherry v. Shaw Coastal, Inc.*
668 F.3d 182 (5th Cir. 2012)................................................14

*Crosby v. Computer Sci. Corp.*
470 Fed. App's 307 (5th Cir. 2012) ......................................13

*Gorman v. Verizon Wireless Tex.*, L.L.C.
753 F.3d 165 (5th Cir. 2014)..................................................7

*Harris v. Forklift Sys., Inc.*
510 U.S. 17 (1993)..............................................................15

*Hernandez v. Yellow Transp., Inc.*
670 F.3d 644 (5th Cir. 2012)................................................15

*Lee v. Kan. City S. Ry. Co.*
574 F.3d 253 (5th Cir. 2009)..........................................8-9, 14

*Lindsley v. TRT Holdings, Inc.*
984 F.3d 460 (5th Cir. 2021)......................................................................7

*Mission Independent School Dist. v. Garcia*
372 S.W.3d 629(Tex. 2012)........................................................................7

*Pope v. ESA Services, Inc.*
406 F.3d 1001 (8th Cir. 2005)....................................................................4

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*
810 F.3d 940 (5th Cir. 2015)..................................................................1, 4

*Ray v. UPS*
587 F. App'x 182 (5th Cir. 2014) ...............................................................9

*Reeves v. Sanderson Plumbing Prods.*
530 U.S. 133 (2000)....................................................................................8

*Scott v. U.S. Bank Nat'l Ass'n*
16 F.4th 1204 (5th Cir. 2021).....................................................................1

*Shager v. Upjohn Co.*
913 F.2d 398 (7th Cir. 1990)......................................................................4

*Vaughn v. Woodforest Bank*
665 F.3d 632 (5th Cir. 2011)......................................................................8

*Wallace v. Methodist Hosp. Sys.*
271 F.3d 212 (5th Cir. 2001)......................................................................8

*Wantou v. Wal-Mart Stores Texas*
L.L.C., 23 F.4th 422 (5th Cir. 2022) ........................................................15


FEDERAL STATUTES

42 U.S.C. § 2000e-2(a)(1).........................................................................14

42 U.S.C. § 2000e-5(e)(1).........................................................................14

v

FEDERAL RULES

5th Cir. R. 32.1 ...............................................................................22

Fed. R. App. P. 32(a)(5) .................................................................22

Fed. R. App. P. 32(a)(6) .................................................................22

Fed. R. App. P. 32(a)(7)(B) ...........................................................22

Fed. R. App. P. 32(f) ......................................................................22

**TO THE HONORABLE JUSTICES OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT AT NEW ORLEANS:**

COMES NOW James Hawthorne, Plaintiff-Appellant, and submits Appellant's Reply Brief.

## ARGUMENT

I.     Genuine Disputes of Material Fact Exist with Respect to Mr. Hawthorne's Retaliation Claim.

    A.     James Hawthorne has Established a *Prima Facie* Claim for Retaliation Against Birdville ISD as a Matter of Law.

To establish a prima facie retaliation case, a plaintiff must show: (1) he was engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). "Importantly, a plaintiff need not demonstrate that the practice was actually unlawful for his opposition to be a protected activity; rather, it is enough that the plaintiff reasonably believed the practice was unlawful." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021). The Equal Employment

Opportunity Commission ("EEOC") provides a listing of issues for which it is unlawful for employers to retaliate against employees, these include[1]:

• filing or being a witness in an EEO charge, complaint, investigation, or lawsuit

• communicating with a supervisor or manager about employment discrimination, including harassment

• answering questions during an employer investigation of alleged harassment

• refusing to follow orders that would result in discrimination.

• resisting sexual advances or intervening to protect others.

• requesting accommodation of a disability or for a religious practice

• asking managers or co-workers about salary information to uncover potentially discriminatory wages.

Protected activity "is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. National*

---

[1]   *Retaliation* (2015) *U.S. Equal Employment Opportunity Commission*. Available at: https://www.eeoc.gov/retaliation (Accessed: 26 September 2024).

*Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Yet, "[n]ot every complaint garners its author protection under Title VII." *See Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006), *citing Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (stating that commenting about absence of black employees, without alleging discrimination, was insufficient to qualify as protected activity). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick*, 437 F.3d at 1232.

Mr. Hawthorne asked his supervisors and his co-workers in HR for an explanation regarding why he was being paid at the bottom of his "step" and not receiving raises to move him up in his step. (ROA.417, 420, 449). Based on the ongoing patterns that started in 2018, Hawthorne believed he was not receiving raises that reflected his seniority in his job scale because he was being discriminated against as a white male by both Director of Purchasing, Shelley Freeman ("Freeman") and Assistant Superintendent for Finances and Auxiliary Services, Katie Bowman ("Bowman"). (ROA.209, 352, 449). Hawthorne was also subject to a false claim of sexual harassment which manifested just at the time of Mr. Hawthorne's questioning of the salary increase revocation. (ROA.373, 397, 450). Mr. Hawthorne, in the September 1, 2021 telephonic meeting denied all allegations made by Administrative Assistant Jordan Bryan ("Bryan") and the investigation did

not turn up any proof that Mr. Hawthorne engage in sexual harassment. (ROA.312 372-373, 380, 405). Instead, Bowman demoted Mr. Hawthorne and wrote him up for unspecified allegations that he "created a negative work environment." (ROA.375, 412-413, 450).

A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"). *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. *Id*. A tangible employment decision requires an official act of the enterprise, a company act. *Id*. The decision in most cases is documented in official company records and may be subject to review by higher level supervisors. *E.g., Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). "Temporal proximity between the protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *See Porter* at 948.

In this case, Mr. Hawthorne was passed over repeatedly for job opportunities, a chance to earn additional income, increases in salary and was being paid, according to BISD's own pay scale, at the minimum pay point for an MT-8 employee, instead of being paid closer to the midpoint in line with the 13 years of seniority that Mr. Hawthorne held due to Bowman's ongoing interference with his employment. (ROA.364, 369, 398, 416, 449). Bowman continuously intervened from 2018 onward to keep Mr. Hawthorne from earning more money and being promoted. (ROA.398, 423, 449-450). In July-August 2021, when Mr. Hawthorne was finally going to get a raise more in line with his seniority, a claim of sexual harassment appeared and without interviewing Mr. Hawthorne, Bowman intervened and reduced his raise and put him on administrative leave. (ROA.351, 355, 373-375, 414-415, 425-428, 450). After Mr. Hawthorne obtained legal counsel to protect himself, Bowman failed to get him terminated since the sexual allegations against him were not able to be proven. (ROA.380, 460, 450). Instead, she demoted him and six weeks later, prepared a "Write-Up" that had no specific allegations against him. (ROA.375, 412-413, 450). Mr. Hawthorne felt he had no other option but to find other employment because he believed that the demotion was not going to be the end of the retaliation from Bowman. (ROA.217).

B.    The District Court Erred When It Held That Hawthorne Did Not Establish a *Prima Facie* Claim for Retaliation.

The District Court argued that Mr. Hawthorne offered no summary judgment evidence to show that he reasonably believed that he was being discriminated against based on sex when he made inquiries about the not receiving raises. (ROA.471-473). Specifically, the District Court argues that Mr. Hawthorne did not believe his wages evidenced discrimination because he "only identified other men who were paid differently from him, not any woman or other protected class member." (ROA.472-473). The District Court also argued that Mr. Hawthorne did not have a reasonable belief that he was discriminated against because Mr. Hawthorne was unable to provide specific reasons supporting his belief. (ROA.472-473).

The District Court stated that Mr. Hawthorne only mentioned men who received a higher salary than him in his deposition, but this is not accurate. (ROA.473). When asked in his deposition if Mr. Hawthorne knew of any women at BISD that received a higher salary, Mr. Hawthorne replied that he knew of multiple women at his pay grade that were paid more than him, but that he could not name them at that moment. (ROA.209). The District Court considered only the first part of his response, while ignoring the rest, as justification to rule that Mr. Hawthorne did not reasonably believe that he received less pay because of his sex. (ROA.473).

There is no legal requirement for an employee to provide exact reasoning for his belief that he is being discriminated against. The District Court stated that Mr.

Hawthorne believed he was discriminated against but claimed he did not specifically articulate the reasons for his belief in his deposition. (ROA.472-472). However, Mr. Hawthorne stated in his deposition that he believed the lack of salary increase was retaliatory. (ROA.217). A Plaintiff is not required to marshal evidence and prove his claim to satisfy the jurisdictional hurdle of establishing prima facie case. *Mission Independent School Dist. v. Garcia*, 372 S.W.3d 629, 634, 637 (Tex. 2012). The District Court created additional hurdles with no basis in law for Mr. Hawthorne to overcome in order to establish his *prima facie* case.

II.   A Genuine Dispute of Material Fact Exists with Respect to Whether Shelley Freeman is a "Nearly Identical Comparator."

A.   Mr. Hawthorne Properly Established Freeman as a "Nearly Identical Comparator."

After the Plaintiff establishes a *prima facie* case of retaliation, the Defendant must then provide a "legitimate, no-retaliatory reason" for the employment action. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021). If the Defendant does so, the burden shifts to the Plaintiff to demonstrate that the Defendant's stated reason is a pretext for unlawful retaliation. *Gorman v. Verizon Wireless Tex.*, L.L.C., 753 F.3d 165, 171 (5th Cir. 2014). A prima facie case, combined with enough evidence to assert the falsity of an employer's asserted justification, may

demonstrate a genuine issue of material fact. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000).

A Plaintiff can establish pretext by showing disparate treatment with respect to a comparator or presenting evidence that his employer's proffered explanation for an adverse employment decision is "false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-638 (5th Cir. 2011). A plaintiff can establish a showing of disparate treatment by demonstrating that an employee in "nearly identical" circumstances, but outside of Plaintiff's protected class, was treated differently than plaintiff. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Comparable situations can be considered "nearly identical" circumstances when the employees being compared "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Nearly identical does not mean identical, "it is sufficient that the **ultimate decision-maker** as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor. *Id.* at 260-261 (emphasis added). Additionally, while the plaintiff's conduct should be nearly identical to the comparator, it does not need to be in the same category of company code but instead may turn on the comparable

8

seriousness of the offense. *Id*. at 260-261; *Ray v. UPS*, 587 F. App'x 182, 194 (5th Cir. 2014).

Shelley Freeman is a "nearly identical" comparator for Mr. Hawthorne because Katie Bowman was the **ultimate decisionmaker** in both the Hawthorne and Freeman investigation and both Mr. Hawthorne and Freeman held supervisory positions at Birdville ISD. (ROA.351, 361, 377-379, 412-414). Because Bowman was the ultimate decision-maker in both investigations, Freeman is a nearly identical comparator.

The complaints filed against both Freeman and Mr. Hawthorne were similar in nature. Both investigations were filed by a direct report and stemmed from allegations of inappropriate conversations in the office. (ROA.211, 314, 351, 425-428, 441, 444-445, 452). Williams reported directly to Freeman and Bryan reported directly to Mr. Hawthorne. (ROA.211, 314, 442).

Mr. Hawthorne had no prior violations or write-up before the investigation in September of 2021. (ROA.361). Mr. Hawthorne always received positive performance evaluations from Freeman and received multiple Touch of Class awards from Birdville ISD. (ROA.359-630, 384-393). Because Mr. Hawthorne had no disciplinary violations, he was in a similar or better position regarding prior violations than Freeman before the investigations.

Bowman was the **ultimate decision-maker** in both Freeman's and Mr.

Hawthorne's investigations. (ROA. 374-377, 414-415, 450). These investigations were due to complaints from direct reports dealing with conversations that made them uncomfortable. (ROA.248, 376). Mr. Hawthorne had no disciplinary actions on record and Freeman may or may not have a disciplinary record. (ROA.361). These two investigations should have been virtually identical in nature. Instead, Bowman handled these investigations in nearly the opposite manner.

In the Freeman investigation, Bowman did not consult with Williams before her resignation regarding her complaint. (ROA.376-377). Bowman first consulted with Freeman to get her side of the story before speaking with any of the other parties to the investigation. (ROA.377). When Bowman did speak with other parties, she spoke with only two other female employees and testified in her deposition that this was a case of Freeman's word against Williams's. (ROA.376-377).

In Mr. Hawthorne's investigation, he was first placed on administrative leave without warning or a chance to defend himself by Bowman. (ROA.373, 397, 450). Bowman urged Bryan, the person who made the complaint, to write down her complaint so that she could bring it forward. (ROA.236-237, 306, 314). Nine (9) other employees around the warehouse, including Bryan, were interviewed before Mr. Hawthorne was interviewed. (ROA.375). Even though the investigation yielded no evidence of sexual harassment, Bowman demoted Hawthorne to a

position that moved him to a new location with reduced pay and no supervisory authority. (ROA.374-375, 414-415, 450). Bowman then sent Mr. Hawthorne an official letter of reprimand based on unspecified allegations of creating a negative work environment. (ROA.375, 412-413, 450).

Bowman determined that neither the Freeman nor the Hawthorne investigation yielded results that corroborated the initial complaints. (ROA.312, 377). Yet, Mr. Hawthorne was placed on administrative leave, demoted to a position with lower pay, no supervisory authority, and he received a reprimand for findings unrelated to the investigation. Freeman was given no reprimand or warning and was never placed on leave or demoted. (ROA.377, 379). The difference in Bowman's handling of these investigations is stark, and the clearest reason for this difference is that Mr. Hawthorne is a male and Freeman is a female. Birdville ISD's reason for demoting and reprimanding Mr. Hawthorne is simply pretext.

B.    The District Court Erred When It Held Freeman is Not a "Nearly Identical Comparator."

The District Court argued that Mr. Hawthorne offered no summary judgment evidence to show that Mr. Hawthorne and Freeman were similarly situated enough to be considered "nearly identical comparators." (ROA.475-477). The District Court asserted that the fact Mr. Hawthorne and Freeman both held supervisory positions

at BISD was not enough to prove they had similar job responsibilities. (ROA.476-477).

Mr. Hawthorne and Freeman do not need to be exactly identical comparators, simply nearly identical comparators. Mr. Hawthorne and Freeman were both tasked with supervising a team of staff, and while they did not have the same job role, the responsibilities were similar. (ROA.316, 354, 361). Bowman conducted both Mr. Hawthorne's and Freeman's investigations, and she was the **ultimate decision-maker** regarding both of their employment statuses. (ROA.377-379, 412-413). Mr. Hawthorne and Freeman were in comparably similar circumstances, with their sex as the biggest differentiating factor.

In its memorandum, the District Court states that it is well settled that a supervisor cannot be used as a comparator, citing only one unpublished case, *Amezquita v. Ben. Tex., Inc.*, as an example of a case where the court ruled that an immediate supervisor was not a comparator. 264 F. App'x 379, 385-386 (5th Cir. 2008); (ROA.477). However, further reading of *Amezquita*, the employee was an accounting executive with no management responsibilities, and the proffered comparator was the only management personnel in the office. *Amezquita*, 264 Fed. App'x. at 385-386. The case at bar presents a distinctly different circumstance, with both Mr. Hawthorne and Freeman having similar supervisory duties. (ROA.316,

354, 361). Freeman testified in her declaration that she had no input on Mr. Hawthorne being passed up for promotion to Director of Transportation, his decreased raise, or the investigation into Mr. Hawthorne for sexual harassment, and ultimate demotion. (ROA.316-317, 364) Freeman stated in her declaration that she, "did not have any input, or take part in any decisions regarding Mr. Hawthorne's employment with the District following the report from Ms. Bryan. [She] did not conduct the investigation into Mr. Hawthorne. In fact, [she] did not have any part in the investigation aside from providing a timeline and being interviewed." (ROA.316-317). Freeman and Mr. Hawthorne were both subject to Bowman's ultimate discretion in deciding the outcome of their employment from the respective investigations.

Defendant introduced a second case regarding comparator status in its Appellee Brief, stating that in *Crosby v. Computer Sci. Corp.*, another unpublished opinion, the court found that the plaintiff and his supervisor were not proper comparators because they "did not have the same supervisor." (Appellee Brief, CMEF p. 36) *Crosby v. Computer Sci. Corp.*, 470 Fed. App's 307, 309 (5th Cir. 2012) (per curiam). However, reading this quote fully, the court in *Crosby* states, "Here, the district court correctly determined that Condit is not a valid comparator because he was Crosby's supervisor (and therefore did not have the same supervisor as Crosby) . . ." *Id.* at 309. The court in *Crosby* is not stating that a comparator cannot

be the employee's supervisor, but just that the employee and his comparator did not share the supervisor, as the comparator was the supervisor. Importantly, it is not required that the employee and comparator have the same supervisor, they can also have their employment status be determined by the same person. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). There is no bar to an employee's supervisor being an identical comparator, as long as the jobs responsibilities are similar in nature, the employee and comparator have the same ultimate decisionmaker regarding their employment, and they have essentially comparable violation histories. Therefore, Freeman is a nearly identical comparator.

III.    Genuine Disputes of Material Fact Exist with Respect to Mr. Hawthorne's Discrimination Claim.

   A.    Mr. Hawthorne Established a Genuine Dispute of Material Fact Regarding a Hostile Work Environment.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . . sex." A hostile work environment due to sexual harassment is discrimination based on sex. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012). "A hostile work environment claim is composed of a series of separate acts that collectively

constitute one 'unlawful employment practice.'" *Wantou v. Wal-Mart Stores Texas*, L.L.C., 23 F.4th 422, 433 (5th Cir. 2022) (quoting 42 U.S.C. § 2000e-5(e)(1)).

A Plaintiff who alleges sexual harassment may establish a violation of Title VII when the harassment (1) involves the conditioning of concrete employment benefits on sexual favors (so-called "quid pro quo" sexual harassment); or (2) creates a hostile or offensive working environment, even when the harassment does not affect the economic benefits of the job. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-52 (1998).

To establish a prima facie case for a hostile work environment, the claimant must show that: (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment was so severe or pervasive enough to affect the terms, conditions, or privileges of employment. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). In order to meet the "severe or pervasive" element for a Title VII sexual harassment hostile work environment claim, "the work environment must be both objectively and subjectively offensive, one that a reasonable person would find offensive, and one that the victim did in fact perceive to be so." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

BISD is an employer within the meaning of Title VII, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Plaintiff is an employee within the meaning of Title VII.

Plaintiff is a white male. A Plaintiff may recover from his employer in a sexual harassment suit based on the conduct of a supervisor. In the case of Mr. Hawthorne, he was exposed to ongoing sexual chatter from Shelley Freeman ("Freeman") regarding her sex life, how her husband often forced her to have sex and that so much sex made her "sore." (ROA.448). Freeman also made veiled inquiries regarding Hawthorne's private life with this wife which Mr. Hawthorne did his best to ignore. (ROA.355-356). Freeman's actions created a hostile work environment under which Plaintiff was forced to work. Plaintiff feared if he reported Freeman, he would experience retaliation. (ROA.355-357, 448). While Freeman did share details of her sex life with others, it is the totality of Freeman's actions, in conjunction with Bowman, that created a hostile work environment for Mr. Hawthorne. Freeman solicited other warehouse employees for any way to sabotage Mr. Hawthorne's employment, Freeman and Bowman actively denied Mr. Hawthorne additional job opportunities, and Freeman and Bowman coaxed Bryan into filing a complaint against Mr. Hawthorne. (ROA.364, 369, 382, 416, 432-433, 444-445, 449, 452-453).

When Mr. Hawthorne finally stood up for himself in 2021 and demanded answers about the rescinded raise, which he believed (based on past denials of job opportunities from Bowman) to be discriminatory in nature; Bowman utilized a coincidentally timed complaint of sexual harassment from Jordan Bryan to suspend Mr. Hawthorne, write him up and ultimately demote him. (ROA.397, 414-415, 417, 420, 430-431, 449-450).

Katie Bowman, a white female, was empowered by Defendant BISD to take tangible employment actions against Plaintiff which she did in the form of denying him opportunities for advancement, reversing his raise, writing him up for unspecified and vague accusations and ultimately demoting him. (ROA.364, 369, 374-375, 394, 412-415, 423, 416, 449-450).

BISD created an ongoing hostile work environment through Defendant's employees Shelly Freeman and Katie Bowman because of Plaintiff's sex. The conduct was so severe that it ultimately caused Plaintiff to be demoted and altered the terms and conditions of his employment such that Plaintiff felt he had no option but to resign in January 2022.

B.     The District Court Erred When It Held Hawthorne Failed to Show Harassment that Altered the Conditions of His Employment

The District Court determined that because Freeman provided the same kind of harassment to both men and women, Mr. Hawthorne could not have been

17

discriminated against because of his sex. (ROA.479-480). The District Court ignored the clear actions by Freeman that created a hostile work environment for Mr. Hawthorne based on sex.

Mr. Hawthorne stated in his complaint and his deposition that he believed he was subjected to a hostile work environment because of the combined actions of Bowman and Freeman. (ROA.209, 357, 449). Freeman specifically singled out Mr. Hawthorne as someone she was seeking to get fired, and the pervasive gratuitous conversations with Mr. Hawthorne that made him dread coming to work is only part of the hostile behavior. (ROA.356, 444-445, 448, 452-453).

While the District Court asserts that because Williams mentioned that Freeman would overshare there was a clear demonstration that Freeman's behavior towards men and women were equal, the Court assumes that the volume and severity of the conversations were equal. (ROA.479-480). In Williams's official complaint to BISD, she did not state that Freeman was oversharing information. (ROA.442-445). She complained about Freeman's extreme lack of professionalism, the fact that Freeman was actively speaking badly about Mr. Hawthorne and that Freeman was looking for an excuse to get him fired, and that Freeman would not provide any administrative assistance as requested to ensure Williams could fulfill her job role effectively. (ROA.446).

The District Court looked only at Freeman's behavior when analyzing Mr. Hawthorne's hostile work environment claim. (ROA.479-480). Bowman conducted the investigation of both Williams's complaint towards Freeman and Bryan's complaint towards Mr. Hawthorne. (ROA.376, 450). Bowman's investigation of Freeman, who is outside of Mr. Hawthorne's protected class, involved an interview with Freeman first, no interview with Williams, the person that filed the complaint, and an interview with only two other employees. (ROA.376-377). In contrast, Bowman interviewed nine other employees, including Bryan, the person that filed the complaint, before finally interviewing Mr. Hawthorne, who was put on administrative leave during the investigation. (ROA.355, 372-3733, 409-411, 450).

It was the combined behavior of Bowman and Freeman that created a hostile work environment for Mr. Hawthorne, not just Freeman's gratuitous oversharing.

## CONCLUSION

For the foregoing reasons, Mr. Hawthorne prays this Court REVERSE the district court's granting of the Defendant's Motion for Summary Judgment in favor of Birdville Independent School District and remand the case back to district court for further proceedings in accordance with this Court's decision.

September 27, 2024

SUBMITTED BY:

*/s/ Debra Edmondson*
Debra Edmondson
State Bar No. 24045824
debra@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
325 Miron Dr., Suite 100
Southlake, Texas 76092

*/s/ Joseph Glover*
Joseph Glover
State Bar No. 24131334
josephg@edmondsonlawfirm.com
The Edmondson Law Firm, P.L.L.C
325 Miron Dr., Suite 100
Southlake, Texas 76092

# CERTIFICATE OF SERVICE

I certify that on September 27, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Meredith Prykryl Walker
Walsh Gallegos Treviño Kyle & Robinson P.C.
105 Decker Court
Suite 700
Irving, TX 75062

Attorney for Appellee Birdville Independent School District

/S/Debra Edmondson
Debra Edmondson

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P.
    32(a)(7)(B) because, excluding the parts of the document exempted by
    FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:

this document contains 4005 words.

2.  This document complies with the typeface requirements of FED. R. APP. P.
    32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of FED. R.
    APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft
Word version 2408 in 14-point Times New Roman font.

S/Debra Edmondson
Debra Edmondson
